**Stanford C. STODDARD, Petitioner,**

v.

**BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, Respondent.**

**No. 88–1148.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 19, 1988.

Decided March 3, 1989.

Keith R. Fisher, with whom Walter A. Smith, Jr., and John G. Roberts, Jr., Washington, D.C., were on the brief, for petitioner.

Douglas B. Jordan, Atty., Bd. of Governors of the Federal Reserve System FRS,

with whom John R. Bolton, Asst. Atty. Gen., Richard M. Ashton, Associate Gen. Counsel, Bd. of Governors FRS, and Ellen Broadman, Asst. Director, Office of the Comptroller, Washington, D.C., were on the brief, for respondent.

Before ROBINSON, STARR and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Stanford C. Stoddard petitions this court for review of an order of the Board of Governors of the Federal Reserve System directing his removal as an officer and director of the Michigan National Bank of Detroit and imposing restrictions on his ability to serve as an officer, director, or employee of other banks. Stoddard argues that because he had resigned his positions before the removal proceedings were initiated, the Board lacked the authority to issue the order. We grant Stoddard's petition for review and vacate the order.

## I. Background

On July 18, 1984, Stanford Stoddard resigned from his positions as Chairman of the Board and Chief Executive Officer of the Michigan National Bank of Detroit ("Bank") and as President, Chairman of the Board, and Chief Executive Officer of the Bank's holding company, the Michigan National Corporation ("MNC"). Nevertheless, on May 10, 1985, the Office of the Comptroller of the Currency ("Comptroller") initiated proceedings to remove Stoddard from his positions with the Bank based on allegations that he had breached his fiduciary duties as an officer and director and engaged in various unsafe and unsound banking practices. The Comptroller did so by serving Stoddard with a "notice of intention to remove" pursuant to subsection 1818(e)(1) ("subsection (e)(1)") of the Federal Deposit Insurance Act ("Act").[1] Nine months later, on February 6, 1986, the Comptroller filed an amended notice stating that Stoddard's removal was also being sought pursuant to subsection 1818(e)(2) ("subsection (e)(2)").[2] The Comptroller premised its jurisdiction under subsection (e)(2) on Stoddard's actions as an officer or director of MNC.

After conducting a hearing, an administrative law judge ("ALJ") in the Office of the Comptroller found, among other things, that Stoddard had instructed the Bank's buildings and properties division, a unit established to perform construction, maintenance, and repair work for MNC's affiliates, to work on properties owned by Stoddard and his family. He had also billed MNC and received reimbursement for a number of social functions alleged to be unrelated to business. Based on these and other findings, the ALJ concluded that Stoddard had violated his fiduciary obli-

---

1. 12 U.S.C. § 1818(e)(1) (1982) provides:

Whenever, in the opinion of the appropriate Federal banking agency, any director or officer of an insured bank ... has engaged or participated in any unsafe or unsound practice in connection with the bank, or has committed or engaged in any act, omission, or practice which constitutes a breach of his fiduciary duty as such director or officer, and the agency determines ... that the director or office [sic] has received financial gain by reason of such violation or practice or breach of fiduciary duty, and that such violation or practice or breach of fiduciary duty is one involving personal dishonesty on the part of such director or officer, or one which demonstrates a willful or continuing disregard for the safety or soundness of the bank, the agency may serve upon such director or officer a written notice of its intention to remove him from office.

2. 12 U.S.C. § 1818(e)(2) provides:

Whenever, in the opinion of the appropriate Federal banking agency, any director or officer of an insured bank, by conduct or practice with respect to another insured bank or other business institution which resulted in substantial financial loss or other damage, has evidenced either his personal dishonesty or a willful or continuing disregard for its safety and soundness, ... and, whenever, in the opinion of the appropriate Federal banking agency, any other person participating in the conduct of the affairs of an insured bank, by conduct or practice ... has evidenced either his personal dishonesty or a willful or continuing disregard for its safety and soundness, ... the agency may serve upon such director, officer, or other person a written notice of its intention to remove him from office or prohibit his further participation in any manner in the conduct of the affairs of the bank.

gations to the Bank and MNC, engaged in "unsafe and unsound business practices," and exhibited a "willful or continuing disregard for the safety and soundness" of the two institutions. The various predicates to issuance of a removal order under subsections (e)(1) and (e)(2) having been met, the ALJ recommended that the Board of Governors of the Federal Reserve System ("Board") order Stoddard removed as Chairman of the Board and Chief Executive Officer of the Bank.

As required by 12 U.S.C. § 1818(e)(5), the Comptroller certified the removal proceeding to the Board for final determination. On January 29, 1988, three-and-a-half years after Stoddard's resignation of his corporate positions, the Board issued a Final Order declaring that Stoddard "is hereby removed from his position as an officer and director" of the Bank and prohibiting him from serving as a director, officer or employee of any bank insured under the Act or subject to the Board's authority unless he receives prior approval.

Stoddard petitions for review on two grounds. First, he asserts that as he had resigned from his posts at the Bank before proceedings were initiated, he does not fall within the purview of subsections (e)(1) and (e)(2). Second, he argues that the facts presented in the record do not demonstrate that he acted with either "personal dishonesty" or with a "willful or continuing disregard for the safety and soundness of the bank," one or the other of which is a prerequisite for the removal of an officer or director under section 1818(e).

## II. DISCUSSION

When, as here, the controversy involves an agency's interpretation of a statute it administers *and* that statute is ambiguous on the question at issue, we will defer to the agency's interpretation as long as it is a permissible one. *Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).

The issue before us is whether proceedings under section 1818(e) may be initiated to remove a person from a position as an officer or director of a bank that that person has ceased to occupy.

Subsections (e)(1) and (e)(2) authorize a federal banking agency, under specified circumstances, to serve upon a bank officer or director "a notice of its intent to remove him from office." Stoddard makes the straightforward point that one cannot remove a person from an office he no longer occupies. Therefore, the statute is capable of but one interpretation: the notice authorized by the subsections may only be served on someone who, at the time of service, holds the position from which the agency intends to remove him.

The Board, however, maintains that the language of the subsections does not limit removal proceedings to incumbent office holders, and it cites two cases in support of its position, *Anaya v. Federal Home Loan Bank Board*, 839 F.2d 1349 (9th Cir.1988), and *Larimore v. Conover*, 775 F.2d 890 (7th Cir.1985), *rev'd on other grounds*, 789 F.2d 1244 (7th Cir.1986) (*en banc*). The Board then concludes that as the subsections are ambiguous and as its interpretation is both reasonable and consistent with the Act's purposes, we are obliged by *Chevron* to defer to its position.

We are unpersuaded. The construction the Board asks us to accept presents a linguistic (and metaphysical) impossibility. One cannot remove what isn't there. Furthermore, we find nothing in *Anaya* or *Larimore*, neither of which deals with subsections (e)(1) or (e)(2), that requires a different conclusion.

In *Anaya*, the Ninth Circuit determined that a former officer of a savings and loan institution fell within the purview of 12 U.S.C. § 1730(g)(1). That section provides that when the Federal Savings and Loan Insurance Corporation ("FSLIC") determines that a director or officer has committed certain types of misconduct, it

> may serve upon such director or officer a written notice of its intention to remove him from office *or to prohibit his further participation in any manner in the conduct of the affairs of the institution.*

(emphasis added). In approving the service of notice on the former officer, the court noted that in section 1730(g)(1),

> [t]he use of the disjunctive "or" creates a class of persons, including the appellant, who are not subject to removal from office as an officer or a director, but whom the FSLIC can prohibit from further activity.

839 F.2d at 1351.

The case before us is clearly distinguishable. Aside from the fact that the *Anaya* court implicitly recognized that a former officer is "not subject to removal," we deal with different statutory language. Subsection (e)(1) is only concerned with an intent to remove from office. While the provisions of subsection (e)(2) appear similar to those of section 1730(g)(1), they contain a critical difference. Subsection (e)(2) authorizes a banking agency to serve upon a "director, officer, *or other person* a written notice of its intention to remove him from office or to prohibit his further participation" in the affairs of the bank (emphasis added). As the Board acknowledged at oral argument and in its brief, the prohibition of further participation, in subsection (e)(2), applies only to persons, other than an officer or director, whose conduct has been found improper.

In *Larimore,* the Seventh Circuit held that the Comptroller had jurisdiction to proceed against a resigned bank official under a provision of the Act similar to subsections (e)(1) and (e)(2), but *Larimore* is inapposite because the bank official in that case resigned *after* being served with a removal notice. The court held that the banking official could not avoid liability "simply by resigning before a hearing was conducted on the charges." 775 F.2d at 896.

In the instant case, the Board's position evokes the old doggerel about the little man who wasn't there ("He wasn't there again today;/Oh how I wish he'd go away."). The Board *knows* that Stoddard is no longer there, yet it insists on the legitimacy of the removal proceedings as a means of exorcising him from the field of banking. As counsel for the Board acknowledged at oral argument, the agency's

purpose in ordering Stoddard's removal from positions he no longer held was to make him subject to the sanctions provided by 12 U.S.C. § 1818(j).

Section 1818(j) authorizes the imposition of fines and imprisonment on a person who, while subject to a section 1818(e)(5) removal order, engages in certain proscribed activities. For example, such a person may not, "without the prior written approval of the appropriate Federal banking agency, ... serve or act as a director, officer, or employee of any bank." 12 U.S.C. § 1818(j). The Board argues, in its brief, that if it lacks the power to remove officers and directors who resign before they are served under subsections (e)(1) and (e)(2), "[a]n official anticipating service of such notice could, by timely resignation, avoid the possibility of an agency order, enforceable by criminal penalties, that would permanently bar the official from serving in that position and would prohibit the individual from serving in similar capacities in other banks without approval." Thus, the Board insists, unless its interpretation is accepted, former bank officials will be able to escape the sanctions that Congress intended for them.

The problem with the Board's appeal to congressional purpose is that it cannot be reconciled with the language of the statute it purports to apply. As the Supreme Court reminds us,

> [t]he "plain purpose" of legislation ... is determined in the first instance with reference to the plain language of the statute itself. Application of "broad purposes" of legislation at the expense of specific provisions ignores the complexity of the problems Congress is called upon to address and the dynamics of legislative action. Congress may be unanimous in its intent to stamp out some vague social or economic evil; however, because its Members may differ sharply on the means for effectuating that intent, the final language of the legislation may reflect hard-fought compromises.

*Board of Gov. v. Dimension Fin. Corp.,* 474 U.S. 361, 373–74, 106 S.Ct. 681, 688–89, 88 L.Ed.2d 691 (1986) (citation omitted).

By its own terms, section 1818(j) applies only to persons "against whom there is

outstanding an effective ... notice or order ... served [upon such individual] under subsections (e)(4), (e)(5), or (g) of this section." *Id.* Thus Stoddard is subject to the sanctions of section 1818(j) only if the Board had the authority, under subsection (e)(5), to issue its final order removing him from his positions with the Bank and prohibiting him from serving as an official or employee of other banks. Subsection (e)(5), however, only deals with proceedings initiated by a "notice of intention to remove," that is to say, a notice served pursuant to subsection (e)(1) or (e)(2). As we hold that such notice may only be served on an incumbent officer or director, it follows that the sanctions of section 1818(j) are not applicable to persons, such as Stoddard, who have resigned their office before removal proceedings are initiated against them.

Because we find that the Board had no jurisdiction under section 1818(e) to remove Stoddard, we need not consider his contention that the Board's removal order was improper because his actions evidenced neither "personal dishonesty" nor a "willful or continuing disregard for the safety and soundness of the bank."

### III. CONCLUSION

Because Stoddard had resigned his positions with the Bank before the Comptroller served its subsection (e)(1) and (e)(2) notices, we grant Stoddard's petition for review and vacate the Board's order.

*So ordered.*