938 F.2d 8
 A. Frederick GREENBERG; Richard M. Greenberg; Frank P.
Greenberg; Stanley S. Abel; Eugene A. Noser,
Jr.; James C. Sargent; Peter Nelson,
Plaintiffs-Appellants,
v.
The COMPTROLLER OF THE CURRENCY; John Doe Nos. 1-10; Jane
Doe Nos. 1-10, Defendants-Appellees.
 No. 1317, Docket 90-6326.
 United States Court of Appeals,
Second Circuit.
 Argued April 17, 1991.
Decided June 28, 1991.
 
 Ross & Hardies, New York City, for plaintiffs-appellants A. Frederick Greenberg, Richard M. Greenberg, and Frank P. Greenberg.
 Gerald D. Fischer, New York City, for plaintiffs-appellants Stanley S. Abel, Eugene A. Noser, Jr., James C. Sargent, and Peter Nelson.
 Tai H. Park, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty. for the Southern District of New York, and Edward T. Ferguson, III, Asst. U.S. Atty., New York City, of counsel), for defendants-appellees.
 Before FEINBERG, VAN GRAAFEILAND and McLAUGHLIN, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 A. Frederick Greenberg, Richard M. Greenberg, Frank P. Greenberg, Stanley S. Abel, Eugene A. Noser, Jr., James C. Sargent, and Peter Nelson, all of whom are former directors of the First City National Bank and Trust Company, appeal from a judgment of the United States District Court for the Southern District of New York (Sprizzo, J.) dismissing their complaint seeking to enjoin the Comptroller of the Currency from going forward with administrative enforcement proceedings against them. We affirm.
 
 
 2
 On December 20, 1989, the Office of the Comptroller of the Currency (OCC) declared First City insolvent and placed it in receivership, effectively separating appellants from their positions with the bank. On March 6, 1990, the OCC notified appellants that it was "considering whether to assess" civil money penalties against each of them for certain transactions involving the bank. See 12 U.S.C. Sec. 93(b). Two weeks later, the OCC commenced additional proceedings to bar appellants A. Frederick Greenberg and Richard M. Greenberg from further participation in the banking business on the ground that they had engaged in improper banking practices for their personal benefit while they were with First City. See 12 U.S.C. Sec. 1818(e). Section 1818(e) authorizes the OCC to institute proceedings to "prohibit any further participation" in the banking business by a party if the OCC determines that the party violated the banking laws to the party's benefit. Similarly, section 93(b) authorizes the OCC to assess civil money penalties against an institution-affiliated party if the OCC finds the party guilty of misconduct. An administrative hearing was held pursuant to sections 93(b)(6) and 1818(e)(4), and the ALJ's decision is awaited.
 
 
 3
 Because appellants no longer were directors of First City when the OCC moved against them, they contended in the district court that the OCC lacked statutory authority to pursue the administrative remedies in question. Appellants based this argument primarily upon a March 3, 1989 decision of the Court of Appeals for the District of Columbia Circuit which held that section 1818, as it then read, did not apply to the defendant bank officer in that case who had resigned his office before the OCC instituted section 1818 proceedings against him. See Stoddard v. Board of Governors of Fed. Reserve Sys., 868 F.2d 1308, 1312 (D.C.Cir.1989). However, promptly following Stoddard, Congress, as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101-73, 103 Stat. 183, enacted the "separation from service" provisions codified in 12 U.S.C. at sections 1818(i)(3) and 93(c). Section 1818(i)(3) provides that
 
 
 4
 [t]he resignation, termination of employment or participation, or separation of an institution-affiliated party (including a separation caused by the closing of an insured depository institution) shall not affect the jurisdiction and authority of the appropriate Federal banking agency to issue any notice and proceed under this section against any such party, if such notice is served before the end of the 6-year period beginning on the date such party ceased to be such a party with respect to such depository institution (whether such date occurs before, on, or after August 9, 1989).
 
 
 5
 Section 93(c) contains similar language to the effect that the OCC may proceed under section 93 within six years after the date a party ceased to be institution-affiliated "(whether such date occurs before, on, or after August 9, 1989)." 12 U.S.C. Sec. 93(c).
 
 
 6
 In the light of these sections the district court, citing 12 U.S.C. Sec. 1818(h) which provides for appeal of OCC orders to the court of appeals, held that it lacked subject matter jurisdiction to grant plaintiffs the injunctive relief they sought. Appellants contend that this was error because the acts complained of by the OCC took place before August 9, 1989, the date the "separation from service" amendments were enacted. Appellants devote much of their brief to arguing the general rule of law that statutes are presumed not to apply retroactively "unless such be the unequivocal and inflexible import of the terms, and the manifest intention of the legislature," United States v. Security Indus. Bank, 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982) (quoting Union Pac. R.R. Co. v. Laramie Stock Yards Co., 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913)). However, appellees have no quarrel with this legal generalization; they rely instead on the congressional intent manifest in the statute. Both section 1818(i)(3) and section 93(c) provide that the OCC's jurisdiction shall not be affected by the separation of an institution-affiliated party "whether such [separation] occurs before, on, or after August 9, 1989." It is difficult to conceive "of any more precise language Congress could have used," Richards v. United States, 369 U.S. 1, 9, 82 S.Ct. 585, 590-91, 7 L.Ed.2d 492 (1962), to authorize the OCC to proceed against former as well as incumbent officers and directors.
 
 
 7
 Appellants point to language in the statute's legislative history to the effect that the provisions at issue can be applied "to yet undiscovered misconduct," construing this language to mean that the provisions can apply only to misconduct not discovered before August 9, 1989. A full reading of Congress's explanation belies this proposition:
 
 
 8
 [The FIRREA section adding subsections 1818(i)(3) and 93(c) ] authorizes the banking agencies to take enforcement actions against culpable institution-affiliated parties who resign or otherwise depart from an institution, within 6 years of their leaving the institution. This section does not create a new offense; it is procedural in nature, and can therefore be applied retroactively to yet undiscovered misconduct and to currently pending supervisory matters that have been stayed awaiting congressional action. For example, assuming that the legislation is enacted on August 26, 1989, a banking agency could initiate and pursue enforcement against any institution-affiliated party who departed an institution in the previous six years dating back to August 26, 1983.
 
 
 9
 H.R.Conf.Rep. No. 222, 101st Cong., 1st Sess. 440, reprinted in 1989 U.S.Code Cong. & Admin.News 432, 479. Here, as in the statute, Congress has expressed its intention to authorize the OCC to proceed against "any institution-affiliated party who departed an institution" in the six years prior to the statutory date of enactment.
 
 
 10
 Assuming for the sake of argument only that there is some ambiguity in the legislative history, we will not substitute a strained interpretation of the legislative history for the plain language of the statute. See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The statutory provisions at issue mandate application whether or not appellants' misconduct was discovered before August 9, 1989.
 
 
 11
 Appellants also argue that retroactive application of the separation from service provisions violates the ex post facto and due process clauses of the United States Constitution and suggest that we construe the statute so as to avoid this constitutional problem. See Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 971 (2d Cir.1985). There is no need to follow this felicitous course in the instant case, however, because appellants' constitutional challenges are without merit. The ex post facto clause, U.S. Const. art. I, Sec. 9, cl. 3, forbids the enactment of a law that imposes punishment for an act not punishable at the time it was committed or increases punishment over that previously prescribed. Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 963-64, 67 L.Ed.2d 17 (1981). In the same vein, the due process clause of the Fifth Amendment generally does not permit the retroactive application of a statute if it has especially harsh and oppressive consequences, Louis Vuitton, supra, 765 F.2d at 972, or results in manifest injustice, Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 567 F.2d 1174, 1179 (2d Cir.1977).
 
 
 12
 At the time appellants allegedly committed the banking law violations, their acts were punishable under the same provisions that the OCC now seeks to enforce. Were it not for appellants' discontinuance as directors of the bank, there would be no question that the OCC could proceed against them. The presumption against retroactivity is designed to protect reasonable reliance on prior settled law, NLRB v. St. Luke's Hosp. Center, 551 F.2d 476, 484 (2d Cir.1976), and appellants do not contend that they relied on any prior law that legalized their conduct. Because the separation from service provisions did not alter the legal consequences of appellants' alleged misconduct that existed when the misconduct occurred, the provisions do not violate either the ex post facto or the due process clause.
 
 
 13
 Appellants mistakenly argue that the district court should have passed upon their claims of res judicata and collateral estoppel that were based upon prior OCC orders and stipulations of settlement. Although on occasion this court has directed that the doctrine of res judicata be applied in an administrative proceeding without waiting until a final order was ready for review, see Safir v. Gibson, 432 F.2d 137, 143-45 (2d Cir.), cert. denied, 400 U.S. 942, 91 S.Ct. 241, 27 L.Ed.2d 246 (1970), the circumstances of the instant case require adherence to the normal requirement of exhaustion of administrative procedures. That is the obvious purport of section 1818(i)(1). Moreover, a judicial determination as to whether any issues in the current OCC proceedings have been settled in prior proceedings would require a comparison of the facts and transactions underlying both the prior and the current proceedings, a comparison that best can be made in the first instance by the OCC itself. The exhaustion doctrine counsels us to allow the OCC to make the necessary factual record and to correct its own errors before we pass on the merits of appellants' claims. See Parisi v. Davidson, 405 U.S. 34, 37, 92 S.Ct. 815, 817-18, 31 L.Ed.2d 17 (1972); McKart v. United States, 395 U.S. 185, 193-95, 89 S.Ct. 1657, 1662-63, 23 L.Ed.2d 194 (1969). Unless an agency is exceeding its jurisdiction, courts ordinarily do not interfere before the agency has completed its task. McKart, supra, 395 U.S. at 194, 89 S.Ct. at 1662-63.
 
 
 14
 Appellants' contention that alleged bias on the part of the OCC renders futile the completion of the administrative proceedings is premature. It is better to delay consideration of this issue until the OCC has made an adverse determination and an appeal has been taken raising the bias claim on the record as a whole. See Touche Ross & Co. v. SEC, 609 F.2d 570, 575 (2d Cir.1979).
 
 
 15
 After carefully considering all of appellants' contentions, we find no merit in any of them. Accordingly, the judgment of the district court is affirmed.