**Florence SNOWDEN, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United States Department of Labor, et al., Respondents.**

No. 00–1318.

United States Court of Appeals, District of Columbia Circuit.

Argued April 13, 2001.

Decided June 19, 2001.

Richard W. Galiher, Jr. argued the cause and filed the briefs for petitioner.

Joshua T. Gillelan, II, Senior Attorney, argued the cause for respondent Director, Office of Workers' Compensation Programs. With him on the brief was Carol A. De Deo, Associate Solicitor.

Roger S. Mackey argued the cause and filed the brief for respondents Washington Hospital Center and Travelers Property Casualty Company.

Before: WILLIAMS, GINSBURG and ROGERS, Circuit Judges.

ROGERS, Circuit Judge:

This case is one of the last claims likely to be brought by a District of Columbia employee under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1994).[1] Florence Snowden appeals an order of the Benefits Review Board of the United States Department of Labor overturning a supplementary compensation order of the Office of Workers' Compensation Programs. The underlying controversy is whether Ms. Snowden's compensation rate should include annual cost of living adjustments under § 910(f) of the Act for the years between her 1978 injury and the 1990 classification of her disability as permanent and total. The only question the court reaches, however, is whether the Board erred in asserting jurisdiction to review the supplementary compensation order. We join the other circuits that have addressed this question in holding that the Board lacked jurisdiction to review the order because it was issued pursuant to § 918(a), and thus became final when issued, with relief available only from the district court. Accordingly, we vacate the November 15, 1999 decision and order of the Board.

I.

Florence Snowden injured her back in 1978 while working as a psychiatric nurse at the Washington Hospital Center.[2] After a formal hearing, an Administrative Law Judge issued a compensation order in 1992 awarding her benefits under the Act for permanent total disability, "commencing December 18, 1990 and continuing for a period of 104 weeks thereafter, including periodic increases to which she may be entitled under the Act." Both the Office of Workers' Compensation Programs ("OWCP") and Aetna appealed to the Benefits Review Board; OWCP appealed the

---

1. The Longshore and Harbor Workers' Compensation Act applies to injuries suffered by private-sector workers in the District of Columbia before July 24, 1982. Thereafter, the District of Columbia Workers' Compensation Act of 1979, D.C.Code § 36–301 to 36–345 (1981), applies. *See* District of Columbia Self–Government and Governmental Reorganization Act, Pub.L. No. 93–198, §§ 204, 302, 404, 87 Stat. 774, 783–84, 787–88 (1973). Because Ms. Snowden's injury occurred in 1978, we refer to the Longshore and Harbor Workers' Compensation Act as it applies in the District of Columbia as "the Act."

2. For ease of reference, we refer to Ms. Snowden's employer, the Washington Hospital Center, and its insurer, Aetna Casualty & Surety Company (now known as Travelers Insurance Company) as "Aetna." We also refer to "OWCP," the Office of Workers' Compensation Programs, without distinguishing between actions taken by various officials in or on behalf of OWCP.

award of § 908(f)[3] relief to Aetna, while Aetna challenged the determination of permanent total disability. The Benefits Review Board affirmed the award of compensation but remanded the claim for § 908(f) relief.[4]

The 1992 compensation order did not specify the manner in which Ms. Snowden's benefit payments were to be calculated. Rather, the order simply stated that Aetna must "pay all periodic permanent total disability benefits ... including periodic increases to which she may be entitled under the Act." Thus, the order did not explicitly state whether Ms. Snowden's compensation rate should reflect the annual cost of living adjustments under § 910(f), i.e., the "catch-up" adjustments, that had accrued in the years between her injury and the classification of her injury as a permanent and total disability.[5] Con-

sistent with *Brandt v. Stidham Tire Co.*, 785 F.2d 329 (D.C.Cir.1986), OWCP advised Aetna that Ms. Snowden's weekly compensation rate would increase from the $192.80 that she had received for temporary total disability to $357.80 for permanent total disability, a figure reflecting the § 910(f) catch-up adjustments compounded since her 1978 injury. Aetna paid Ms. Snowden as OWCP instructed.

Aetna did not challenge OWCP's methodology for computing Ms. Snowden's benefit payments until June 11, 1998. Then, relying on the Board's recent decision in *Bailey v. Pepperidge Farm, Inc.*, BRB No. 97–1156, 1998 WL 285563 (Benefits Review Bd. May 19, 1998), Aetna unilaterally cut Ms. Snowden's weekly benefit payments by nearly half, from $438.00 to $236.00, and requested an order from OWCP allowing it to take a credit under § 914(j) for $76,626.31 in alleged overpayments.[6] Ms. Snowden filed a claim under § 914(f)[7] for

---

3. Pursuant to § 908(f), the Special Fund, established in 33 U.S.C. § 944, will assume responsibility for permanent total disability payments after 104 weeks if "the employee is totally and permanently disabled, and the disability is found not to be due solely to that injury...." 33 U.S.C. § 908(f)(1).

4. On remand, the Administrative Law Judge ruled that § 908(f) was inapplicable and denied Aetna's request for reconsideration. The Board affirmed on Aetna's second appeal. Aetna thereafter reimbursed the Special Fund for payments it had made to Ms. Snowden since December 1992 and reinstated payments at rates that included catch-up adjustments.

5. Under § 910, "Determination of Pay," subsection (f) provides that cost of living adjustments to compensation benefits are available only to those claimants whose disability is classified by OWCP as permanent and total. *See* 33 U.S.C. § 910(f).

6. In *Brandt*, 785 F.2d at 332, this court adopted the interpretation of § 910(f) set forth in *Holliday v. Todd Shipyards Corp.*, 654 F.2d 415, 417, 422 (5th Cir.1981), whereby § 910(f) catch-up adjustments were retroactive to the date of injury. In this opinion, we refer to *"Brandt/Holliday"* as the rule that

applied when OWCP issued Ms. Snowden's 1992 compensation order. In 1990, the Fifth Circuit, sitting *en banc*, overruled *Holliday*. *See Phillips v. Marine Concrete Structures, Inc.*, 895 F.2d 1033, 1035 (5th Cir.1990). Some years later, in 1998, the Board held in *Bailey* that *Brandt/Holliday* "no longer applies to cases arising under the [] Act." *Bailey*, 1998 WL 285563, at *4. Henceforth, catch-up benefits under § 910(f) would no longer be retroactive to the date of injury but would apply only to periods after an injury was classified by OWCP as permanent and total. *See id.* In contrast to the request made by Aetna for a credit reimbursement, no retroactive adjustment arose in *Bailey*, 1998 WL 285563, at *1–*4, because the employer had never commenced paying at the retroactive catch-up rate, and in *Phillips*, 895 F.2d at 1035–36, the employer and the Board agreed not to seek reimbursement from the claimant.

7. Section 914(f), "Additional Compensation for Overdue Installment Payments Payable Under Terms of Award," provides:

   If any compensation, payable under the terms of an award, is not paid within ten days after it becomes due, there shall be added to such unpaid compensation an amount equal to 20 per centum thereof,

additional compensation for overdue installments based on Aetna's failure to pay in accord with *Brandt/Holliday*. OWCP issued a "supplementary compensation order" in 1998, finding Aetna in violation for failure to make more than $3500 in benefit payments, and liable, therefore, under § 914(f) for a penalty equal to 20% of the shortfall. Aetna paid Ms. Snowden the past-due benefits but not the 20% penalty.[8] Aetna then appealed the supplementary compensation order to the Benefits Review Board.

The Board reversed OWCP's award of catch-up adjustments in the 1998 supplementary compensation order, while noting that because the penalty had not been paid, it "lack[ed] jurisdiction to address the propriety of the penalty." On reconsideration, the Board rejected OWCP's argument that the Board lacked jurisdiction because the 1998 supplementary compensation order was issued pursuant to § 918(a), and thus was subject only to review by the district court. The Board took the position that there had never been a formal determination in the 1992 compensation order that Ms. Snowden was entitled to § 910(f) catch-up adjustments retroactive to the date of her injury, and thus the alleged default of the catchup adjustments was not "compensation due under any award of compensation" pursuant to § 918(a). In the Board's view, the 1998 supplementary compensation order was "an original adjudication of the *Brandt/Holliday* issue which is subject to review by the Board." The Board also ruled that Aetna would not receive credit for catch-up adjustments made prior to the *Bailey* decision but would be entitled to

reduce Ms. Snowden's payments subsequent to *Bailey* so as to recover the amount of *Brandt/Holliday* overpayments.

## II.

As a threshold matter, Ms. Snowden, joined by OWCP, contends that the Benefits Review Board lacked jurisdiction to review the 1998 supplementary compensation order because the order was issued under § 918(a), not § 921(a).

▇▇▇ Our review of decisions and orders of the Benefits Review Board is for errors of law and for confirmation that the Board acted within the scope of its review in evaluating the decision of the administrative law judge. *See Brown v. I.T.T./Continental Baking Co.*, 921 F.2d 289, 293 (D.C.Cir.1990) (citing *Stark v. Washington Star Co.*, 833 F.2d 1025, 1027 (D.C.Cir.1987); *Stevenson v. Linens of the Week*, 688 F.2d 93, 96–97 (D.C.Cir.1982); *Sun Shipbuilding & Dry Dock Co. v. McCabe*, 593 F.2d 234, 237 (3d Cir.1979)). The Board does not make policy; "its interpretation of the [Act] thus is not entitled to any special deference from the courts." *Potomac Elec. Power Co. v. Director, OWCP*, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980) (citing *Hastings v. Earth Satellite Corp.*, 628 F.2d 85, 94 (D.C.Cir.1980); *Tri-State Terminals, Inc. v. Jesse*, 596 F.2d 752, 757 n. 5 (7th Cir.1979)). We hold that the Board lacked the jurisdiction to review the 1998 supplementary compensation order because it was a final order unreviewable by the Board.

---

which shall be paid at the same time as, but in addition to, such compensation, unless review of the compensation order making such award is had as provided in section 921 of this title and an order staying payment has been issued by the Board or court.

33 U.S.C. § 914(f).

8. After Ms. Snowden filed for a default under § 918(a), OWCP issued a second supplementary compensation order in 1999 declaring the 20% penalty in default.

■ The Act provides for review of compensation orders in two principal ways. Section 921 provides generally for the review of compensation orders by the Board.[9] Specifically, § 921(a) provides that a compensation order shall become "effective" upon its filing pursuant to § 919, "unless proceedings for the suspension or setting aside [the] order are instituted" within thirty days. 33 U.S.C. § 921(a). Until that time, the Board has jurisdiction to "determine appeals raising a substantial question of law or fact taken by any party in interest from decisions with respect to claims of employees...." *Id.* § 921(b)(3). In contrast, § 918(a) addresses the collection of defaulted payments under an award of compensation.[10] Thus, where an employer has failed to make payment for thirty days after a payment is due under a compensation award, the claimant may file for a supplementary or-

der declaring the amount in default; the supplementary order becomes "final" when issued. *Id.* § 918(a). Review is not available by the Board, but only in an enforcement proceeding in the district court. *See id.* The Ninth Circuit has described the three prime distinctions between § 918 orders and § 921 orders:

(1) [O]rders issued under § 918, unlike § 921 orders, are not appealable to the Board; (2) § 918 orders are final when issued unlike § 921 orders which do not become final until after 30 days or, if appealed, after appeal; and (3) as a result, § 918 supplementary orders can immediately be filed with the federal district court for enforcement.

*Providence Wash. Ins. Co. v. Director, OWCP,* 765 F.2d 1381, 1385 (9th Cir.1985). OWCP maintains that "finality" under § 918(a) means that "such an order is not subject to the ordinary review process of

9. Section 921, "Review of Compensation Orders," provides in subsection (b)(3):

> The Board shall be authorized to hear and determine appeals raising a substantial question of law or fact taken by any party in interest from decisions with respect to claims of employees under this chapter and the extensions thereof. The Board's orders shall be based upon the hearing record. The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole. The payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding unless ordered by the Board. No stay shall be issued unless irreparable injury would otherwise ensue to the employer or carrier.
>
> 33 U.S.C. § 921(b)(3).

10. Section 918, "Collection of Defaulted Payments; Special Fund," provides in subsection (a):

> In case of default by the employer in the payment of compensation due under any award of compensation for a period of thirty days after the compensation is due and payable, the person to whom such compen-

sation is payable may, within one year after such default, make application to the deputy commissioner making the compensation order or a supplementary order declaring the amount of the default. After investigation, notice, and hearing, as provided in section 919 of this title, the deputy commissioner shall make a supplementary order, declaring the amount of the default, which shall be filed in the same manner as the compensation order.... The applicant may file a certified copy of such supplementary order with the clerk of the Federal district court for the judicial district in which the employer has his principal place of business or maintains an office, or for the judicial district in which the injury occurred.... Such supplementary order of the deputy commissioner shall be final, and the court shall upon the filing of the copy enter judgment for the amount declared in default by the supplementary order if such supplementary order is in accordance with law. Review of the judgment so entered may be had as in civil suits for damages at common law. Final proceedings to execute the judgment may be had by writ of execution in the form used by the court in suits at common law in actions of assumpsit....

> 33 U.S.C. § 918(a) (footnote omitted).

§ [9]21, at least where the amount declared in default has not been paid in full, because such review would be duplicative of that available from the district court."

As other circuits have observed, the Longshore and Harbor Workers' Compensation Act is "explicitly designed to encourage the prompt payment by employers of obligations under a compensation order notwithstanding the existence of an appeal." *Id.* at 1384. Thus, the Fifth Circuit stated that where employers fail to meet their obligations, § 918(a) "provides a quick and inexpensive mechanism for the prompt enforcement of unpaid compensation awards, a theme central to the spirit, intent, and purposes of the [Act]." *Tidelands Marine Serv. v. Patterson,* 719 F.2d 126, 129 (5th Cir.1983). With that statutory purpose in mind, it follows that a § 914 order and a § 918 standard default order differ only in immaterial ways; under the former, OWCP must compute the 20% penalty amount that should be added to the default amount. An order issued under § 914(f) thus "is nothing more than a standard default order, plus an additional arithmetic computation." *Providence,* 765 F.2d at 1386. Because § 914 directs that both the default amount and the penalty amount be paid at the same time, the terms of the statute explicitly reject any distinction between § 918 awards of "existing compensation" and § 914(f) awards of "additional compensation." *Id.* Both awards are "based on an appealable prior compensation order that resolves the substantive rights of the parties." *Id.*

■ Both the statute and caselaw indicate that whether the award of additional compensation for overdue installments and the declaration of the default are separately issued orders or combined into a single supplementary order is irrelevant. *See id.* at 1385; *Tidelands,* 719 F.2d at 128–29 & 128 n. 3. In *Tidelands,* when the employer failed to pay the § 914(f) penalty due within thirty days after the filing of the award, OWCP issued a supplementary compensation order, finding the employer in default of the penalty under § 914(f). *See Tidelands,* 719 F.2d at 128 & n. 3. The Fifth Circuit held that the second order was not a § 914(f) order because the clear "substance [of] the order was a 'supplementary order declaring the amount of the default' within the meaning of Section [9]18(a) of the [Act]...." *Id.* at 128 n. 3. In *Providence,* the supplementary compensation order awarding a 20% penalty and the supplementary compensation order declaring default of the 20% penalty were combined into a single supplementary compensation order. *See Providence,* 765 F.2d at 1385. The Ninth Circuit adopted the Fifth Circuit's approach, observing that were the § 914(f) supplementary order "subject to § 921 procedures, it would be far more difficult and cumbersome for a claimant to collect both awards at the same time," as the Act contemplates. *Id.* at 1386. For, as the Ninth Circuit noted, the default amount would be immediately collectible, while the 20% penalty could be collected only after waiting for the expiration of the 30–day review period under § 921 and then obtaining from OWCP a second supplementary order under § 918 declaring the first supplementary order in default. *See id.* The latter scheme, the court concluded, "is obviously needlessly duplicative and time consuming and completely at variance with Congress' intent," *id.* (citing *Tidelands,* 719 F.2d at 129), namely, to provide "a quick and streamlined mechanism for the collection of compensation under the [Act]." *Id.*

■ Consequently, "notwithstanding the general grant of jurisdiction to the Benefits Review Board contained in 33 U.S.C. § 921(b)(3)," the circuits to address the issue have concluded that "actions for the enforcement of orders declaring default in

the payment of [installments] due under either § 914(f) or any other substantive section of the [Longshore and Harbor Workers' Compensation Act] are to be brought in the district court and, only subsequent thereto, by appeal to the appropriate court of appeals." *Tidelands,* 719 F.2d at 129; *see also Sea–Land Serv., Inc. v. Barry,* 41 F.3d 903, 907 (3d Cir.1994); *Providence,* 765 F.2d at 1386. We agree, for reasons set forth by the Fifth and Ninth Circuits, that such an interpretation is consistent with the statutory language and "far better" conforms to Congressional intent. *Providence,* 765 F.2d at 1386.

■ The 1998 supplementary compensation order was sought by Ms. Snowden pursuant to § 914(f) and resulted in OWCP's issuance of a supplementary order declaring Aetna in default of paying installments due under the 1992 compensation order. *See supra* n. 8. As such, the 1998 order was manifestly an order for the collection of defaulted payments within the meaning of § 918(a). As OWCP states, the 1992 compensation order was "plainly premised on th[e] view" that *Brandt/Holliday* applied to all awards for permanent total disability under the Act, and "on the consequent proposition that the compensation [] calculated and declared in default was 'due under' the [1992 compensation order]." Respondent's Brief at 15. The Board's characterization of the 1998 supplementary compensation order as "an original adjudication of the *Brandt/Holliday* issue" ignores both this circuit's law at the time the 1992 compensation order was issued and OWCP's contemporaneous understanding of the compensation rate for permanent total disability benefits in the District of Columbia. The Board's interpretation would also mean delays in receipt of amounts due to claimants contrary to the purposes of the Act and the specific provisions of § 918 to ensure quick payment of defaulted amounts. *See Providence,* 765 F.2d at 1386.

Essentially then, the Board failed to acknowledge the distinction between appeals of compensation orders and proceedings relating to compensation orders that are not direct appeals of the underlying compensation orders, but are "application[s] for a supplementary order declaring a default in the payment of compensation under § [9]18(a)...." *Bray v. Director, OWCP,* 664 F.2d 1045, 1047 (5th Cir.1981). "Such a deficiency is distinct from an error of fact or law, which must be asserted within 30 days after the filing of a compensation order." *Id.* (citing § 921(a)). Given the undisputed record that Aetna paid Ms. Snowden pursuant to the 1992 compensation order on the basis that she was entitled to the benefit of the catch-up adjustments, the fact that § 910(f) was not explicitly mentioned in the 1992 compensation order is not dispositive of the jurisdictional issue. The reference was implicit in light of *Brandt/Holliday,* and for years Aetna paid without challenging OWCP's methodology for calculating Ms. Snowden's compensation rate. When Aetna did challenge the methodology, it relied on the Board's decision in *Bailey,* which acknowledged a change of law in ruling that the *Brandt/Holliday* rule "no longer applies to cases arising under the [] Act." *Bailey,* 1998 WL 285563, at *4.

Finally, although Ms. Snowden and OWCP ask the court to address whether *Brandt/Holliday* is still law in this circuit, we decline to do so in view of our holding that the Board lacked jurisdiction to review the supplementary compensation order. Once the court has determined that the agency did not have jurisdiction to act, the court has declined to consider the merits of contentions that the agency erred. *See, e.g., Stoddard v. Board of Governors of the Fed. Reserve Sys.,* 868 F.2d 1308, 1312 (D.C.Cir.1989); *see also Synovus Fin. Corp. v. Board of Governors of the Fed. Reserve Sys.,* 952 F.2d 426, 428

(D.C.Cir.1991); *Seatrain Lines, Inc. v. Federal Maritime Comm'n,* 460 F.2d 932, 949 (D.C.Cir.1972), *aff'd,* 411 U.S. 726, 93 S.Ct. 1773, 36 L.Ed.2d 620 (1973). In view of our practice, which is binding absent *en banc* review, the court has no occasion to decide whether it has jurisdiction to reach the substantive contentions. *Cf. Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986).[11]

Accordingly, because the Benefits Review Board lacked jurisdiction to review the 1998 supplementary compensation order issued pursuant to § 918(a), we vacate the November 15, 1999 decision and order of the Board.

---

11. The court, therefore, also does not reach Ms. Snowden's contentions that any modification to *Brandt/Holliday* be prospective, and that the Board erred in ruling that the lower compensation rates should be applied as of the date of *Bailey.* The court likewise does not reach OWCP's contentions that the Board misread *Brandt,* that this court should overrule *Brandt,* and that, in any event, Aetna waived any objection to the application of *Brandt* by failing timely to raise its objection.