UNITED STATES of America, Appellee,

v.

Christine KOEHLER, also known as "Christine Dalfonso," Defendant–Appellant.

No. 1175, Docket 91–1585.

United States Court of Appeals, Second Circuit.

Argued April 3, 1992.

Decided Aug. 21, 1992.

Susan Corkery, Asst. U.S. Atty. for the Eastern District of New York, Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty. for the Eastern District of N.Y., Judith Lieb, Asst. U.S. Atty. for the Eastern District of N.Y., of counsel), for appellee.

B. Alan Seidler, Nyack, N.Y., for defendant-appellant.

Before KEARSE and MAHONEY, Circuit Judges, and RESTANI, Judge.*

MAHONEY, Circuit Judge:

Defendant-appellant Christine Koehler appeals from a judgment of the United States District Court for the Eastern District of New York, Raymond J. Dearie, *Judge*, entered September 30, 1991 that revoked the three-year term of supervised release she was then serving and sentenced her to a one-year term of imprisonment, to be followed by a three-year term of supervised release.

Because we conclude that the district court was without authority under 18 U.S.C. § 3583(e) (1988 & Supp. II 1990) to reimpose a term of supervised release after revoking the original term and imposing a term of imprisonment, we vacate the sentence and remand for resentencing.

## Background

On November 2, 1988, Koehler pled guilty to one count of willfully transporting hazardous materials in violation of 49 U.S.C.App. § 1809(a)(1), (b) (1988 & Supp. II 1990). The plea resulted from her transportation of twenty-four canisters of nitrous oxide and ten flammable canisters of butane fuel aboard an Eastern Airlines flight originating at John F. Kennedy International Airport on March 1, 1988. On January 6, 1989, she was sentenced to time served, a three-year term of probation,[1] drug treatment, and community service.

On June 13, 1989, Koehler pled guilty to violating the terms of her probation and was sentenced to three years probation, a residential drug treatment program, and community service. On September 14, 1989, she again pled guilty to violating the terms of her probation. The district court sentenced her to twenty-eight months imprisonment followed by a three-year term of supervised release.[2] By order entered July 2, 1990, the court directed that effective September 13, 1990, Koehler's sentence was to be reduced to time served.

On September 25, 1991, Koehler pled guilty to violating the terms of her supervised release by failing to report to her probation officer, failing to report an address change, and using illegal drugs. She had previously tested positive for cocaine on September 19, 1990 and for tranquilizers on October 2, 1990, and had admitted drug use in telephone conversations with her probation officer in March 1991. The district court revoked her supervised release and sentenced her to a one-year term of imprisonment, to be followed by a new three-year term of supervised release.

The district court thereafter denied Koehler's request for modification of her sentence, pursuant to Fed.R.Crim.P. 35, to eliminate the term of supervised release. Koehler appeals this ruling.

## Discussion

■ Koehler was first sentenced to probation as an alternative to imprisonment under § 3561. When she violated the terms of her probation, she was ultimately sentenced to a term of imprisonment followed by supervised release. This sentence was authorized by § 3565(a)(2), which provides that a court sentencing a defendant who has violated probation may "revoke the sentence of probation and impose any other sentence that was available ...

---

* The Honorable Jane A. Restani of the United States Court of International Trade, sitting by designation.

1. Under 18 U.S.C. § 3561 (1988) and U.S.S.G. § 5B1.1, probation may be imposed as an alternative to imprisonment for certain less serious offenses. If the probationer violates the terms of probation, revocation or modification of the sentence is governed by 18 U.S.C. § 3565 (1988 & Supp. II 1990).

2. Section 3565(a)(2) authorized the court, upon revoking Koehler's probation, to "impose any other sentence that was available ... at the time of the initial sentencing." Imprisonment and supervised release were available when Koehler was originally sentenced. *See* 49 U.S.C.App. §§ 1809(b) (1988) (imprisonment); 18 U.S.C. § 3583(a) (1988) (supervised release). Supervised release, rather than probation, may follow a term of imprisonment pursuant to § 3583.

at the time of the initial sentencing." *See supra* note 2.

When Koehler violated her later term of supervised release, the district court apparently believed that it was effectively sentencing Koehler for a violation of her original probation, so that the full range of sentencing options was available under § 3565(a)(2). The court stated that "[i]n effect, what we do because of the probation resentence, we go back to where we were the day I initially imposed sentence, so I would have available to me the full range of sentencing [options]." Koehler had violated a later term of supervised release, however, a situation governed by § 3583. *See United States v. Stephenson,* 928 F.2d 728, 730–31 (6th Cir.1991) (sentencing upon revocation of supervised release controlled by § 3583(e), not § 3565). Thus, the sentence imposed must be authorized by § 3583.

A district court's options in modifying or revoking a term of supervised release are set forth in § 3583(e), as follows:

The court may ...—
(1) terminate a term of supervised release and discharge the person released at any time after the expiration of one year of supervised release ...;
(2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release ...;
(3) revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision, ...; or
(4) order the person to remain at his place of residence....

*Id.* (emphasis added).

The " 'starting point in every case involving construction of a statute is the language itself.' " *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986) (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)). "When we find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances." *Demarest v. Manspeaker,* 498 U.S. 184, ——, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991); *see also Connecticut Nat'l Bank v. Germain,* —— U.S. ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992); *Burlington N. R.R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1859, 95 L.Ed.2d 404 (1987).

As the Court recently summarized:

The "strong presumption" that the plain language of the statute expresses congressional intent is rebutted only in "rare and exceptional circumstances," *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981), when a contrary legislative intent is clearly expressed. *INS v. Cardoza-Fonseca,* 480 U.S. 421, 432, n. 12, 107 S.Ct. 1207, 1213, n. 12, 94 L.Ed.2d 434 (1987); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

*Ardestani v. INS,* —— U.S. ——, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991). "Therefore, we look to the legislative history to determine only whether there is 'clearly expressed legislative intention' contrary to [the statutory] language...." *Cardoza-Fonseca,* 480 U.S. at 432 n. 12, 107 S.Ct. at 1213 n. 12 (citing *United States v. James,* 478 U.S. 597, 606, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986); *Consumer Prod. Safety Comm'n,* 447 U.S. at 108, 100 S.Ct. at 2056). Further, "only the most extraordinary showing" of a contrary intention from the legislative history would justify interpretive departure from a statute's plain meaning. *Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984); *see also Greenberg v. Comptroller of the Currency,* 938 F.2d 8, 11 (2d Cir.1991) ("we will not substitute a strained interpretation of the legislative history for the plain language of the statute").

We think that the language of § 3583 precludes the combination of sentencing options that was imposed in this case. Revo-

cation of the original term of supervised release and imposition of a prison term under subdivision (3) of § 3583(e) is linguistically inconsistent with extension or modification of that term under subdivision (2). As the Fifth Circuit recently stated:

Section 3583(e)(3) authorizes the district court to "revoke" a term of supervised release. "Revoke" generally means to cancel or rescind. Once a term of supervised release has been revoked under § 3583(e)(3), there is nothing left to extend, modify, reduce, or enlarge under § 3583(e)(2). The term of release no longer exists. Thus regardless of whether the options available under § 3583(e) could otherwise be used together, or in succession, the revocation and extension options are by their very nature mutually exclusive.

*United States v. Holmes*, 954 F.2d 270, 272 (5th Cir.1992).

█ Further, even if we deemed the statute ambiguous, " 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.' " *Liparota v. United States*, 471 U.S. 419, 427, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985) (quoting *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971)). The rule of lenity applies not only to the substantive reach of criminal laws, but also to criminal penalties. *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980) (" 'This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.' ") (quoting *Ladner v. United States*, 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958)). An interpretation of § 3583 that allowed a term of imprisonment pursuant to subdivision (3) to be followed by a fresh term of supervised release pursuant to subdivision (2) would increase the penalty imposed upon Koehler without any clear statutory basis for doing so, counter to the rule of lenity.

We are confirmed in our interpretation of § 3583(e) by the concurring views of all but one of the other courts of appeals that have addressed the issue. *See United States v. Cooper*, 962 F.2d 339, 341–42 (4th Cir.1992); *United States v. Williams*, 958 F.2d 337, 339 n. 1 (11th Cir.1992) (expressing support for disjunctive interpretation but basing decision on another ground); *Holmes*, 954 F.2d at 271–73; *United States v. Behnezhad*, 907 F.2d 896, 898–99 (9th Cir.1990); *United States v. Gozlon–Peretz*, 894 F.2d 1402, 1405 n. 5 (3d Cir.1990) (dictum), *amended*, 910 F.2d 1152 (3d Cir. 1990), *aff'd on other grounds*, ― U.S. ――, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991). *But see United States v. Boling*, 947 F.2d 1461, 1461–64 (10th Cir.1991). Further, as noted in *United States v. Behnezhad*, 907 F.2d 896 at 898–99, (9th Cir.1990), nothing in the legislative history of § 3583(e) suggests a contrary interpretation.

*Boling* stressed the dissatisfaction expressed with the earlier *Behnezhad* decision by a number of members of Congress, and by the Sentencing Commission "as evidenced both by the policy statement it promulgated [U.S.S.G. § 7B1.3(g)(2), p.s.] and its transmission to Congress of a proposal to address the issue." 947 F.2d at 1462. The court also noted the benefits of flexibility for sentencing courts dealing with violators of supervised release. *Id.* at 1463.

We are not unsympathetic to those views. Nor, however, are we persuaded by them. *Boling* pointed to "[t]he comments of members of Congress who are now in the process of amending § 3583." *Id.* at 1462. However, as the Fifth Circuit stated in *Holmes:* "Looking to a proposed amendment to § 3583 to justify an interpretation of the current version is ... inappropriate." 954 F.2d at 273; *see also New York City Health & Hosps. Corp. v. Perales*, 954 F.2d 854, 861 (2d Cir.1992) (subsequent interpretive comment by legislative committee regarding earlier statute carries little weight with courts) (collecting cases). As to the views of the Sentencing Commission, U.S.S.G. § 7B1.3(g)(2) is a nonbinding policy statement, and the pertinent application note specifies that "[u]nder § 7B1.3(g)(2),

the court may order, *to the extent permitted by law,* the recommencement of a supervised release term following revocation." U.S.S.G. § 7B1.3, comment. (n. 2) (emphasis added).

Finally, it may well be a sound idea to allow greater flexibility in sentencing violators of supervised release than § 3583(e) presently allows, but this is an issue for Congress, not the courts. *See Cooper,* 962 F.2d at 342 ("we must await congressional action, if any, for the addition of flexibility to the provisions of section 3583(e)(3)"); *Williams,* 958 F.2d at 339–40 ("such fundamental changes in sentencing policy must come from Congress, not the courts"); *Boling,* 947 F.2d at 1466 n. 4 (Holloway, J., dissenting) ("the proper role of the judiciary should not be a race with Congress to amend a federal statute").

## Conclusion

The judgment of conviction is affirmed, but the sentence is vacated and remanded for resentencing consistent with this opinion.