David **STRONG**, Petitioner–Appellee,

v.

**U.S. PAROLE COMMISSION,**
Respondent–Appellant.

**Docket No. 97–2171**

United States Court of Appeals,
Second Circuit.

Argued Nov. 21, 1997.

Decided April 13, 1998.

Jennifer K. Brown, Assistant U.S. Attorney (Mary Jo White, U.S. Attorney for Southern District of New York, Steven M. Haber, Assistant U.S. Attorney, of counsel), New York City, for Respondent–Appellant.

Henriette D. Hoffman, New York City (The Legal Aid Society, Federal Defender Division, Appeals Bureau, of counsel), for Petitioner–Appellee.

Before: OAKES, KEARSE, and FRIEDMAN,* Circuit Judges.

OAKES, Senior Circuit Judge:

The United States Parole Commission appeals from the decision of the United States District Court for the Southern District of New York, Shira Scheindlin, *Judge,* granting a writ of habeas corpus to appellee David Strong. The district court held that the Parole Commission had exceeded its authority by reimposing a special parole term, instead of regular parole, after the original special parole term had been revoked.

Affirmed.

## I. BACKGROUND

The issue in this appeal is whether the Parole Commission may, after revoking an offender's special parole, impose a subsequent term of special parole in lieu of the full term of imprisonment or whether it may only impose regular parole.

Defendant-Appellee David Strong was convicted in 1982 of several narcotics and firearms violations. He was sentenced to twelve years in prison plus a five-year special parole term. Created in 1970, special parole was intended as a special sanction for drug offenders. *See* Statement of John Ingersoll, Narcotics Legislation: Hearings on S. 1895 et al. Before the Subcomm. to Investigate Juvenile Delinquency of the Senate Comm.

* The Honorable Daniel M. Friedman of the United States Court of Appeals for the Federal Circuit, sitting by designation.

on the Judiciary, 91st Cong. 663, 676 (1969), *quoted in Bifulco v. United States,* 447 U.S. 381, 392, 100 S.Ct. 2247, 2254–55, 65 L.Ed.2d 205 (1980). It differs from regular parole in three respects: "first, special parole follows the term of imprisonment, while regular parole entails release before the end of the term; second, special parole was imposed, and its length selected, by the district judge rather than by the Parole Commission;" third, if the conditions of special parole are violated, the parolee is returned to prison to serve the entire special parole term, and receives no credit for his time spent in noncustodial supervision, or "street time." *Evans v. United States Parole Comm'n,* 78 F.3d 262, 263 (7th Cir.1996).

Strong was released on regular parole from his twelve-year prison term in 1986. During his period of regular parole, Strong's parole was revoked twice for continued use of narcotics and failure to enter a drug treatment program. In 1993 he was paroled again and his term of special parole began on February 12, 1994. He was arrested for parole violations on May 6, 1994, and his special parole was revoked on August 31, 1994. The Parole Commission denied him credit for his three months of street time, and returned him to prison. Strong was reparoled to special parole on February 23, 1996. Having served 21 months of his five-year special parole term in prison, he had 39 months remaining. On April 25, 1996, the probation office reported to the Parole Commission that Strong had tested positive for cocaine on April 9, 1996. The probation office stated that Strong had voluntarily admitted himself into a long-term drug treatment facility, and that if he left the facility early, a violator warrant would be issued for him.

On March 7, 1996, Strong filed a pro se writ of habeas corpus, arguing in part that the Parole Commission lacked authority to reimpose special parole after having revoked it. The district court (Shira Scheindlin, *Judge* ) granted the writ in part, finding that the Parole Commission lacked authority to re-parole Strong to special parole rather than

regular parole once the special parole term had been revoked.[1] *Strong v. United States Parole Comm'n,* 952 F.Supp. 172 (S.D.N.Y. 1997). The district court relied on this court's decision in *United States v. Koehler,* 973 F.2d 132 (2d Cir.1992), holding that the term "revoke" in the statute governing supervised release, 18 U.S.C. § 3583 (1988 ed.) (amended 1994), meant to cancel or rescind so that after revocation, a " 'term of supervised release no longer exists.' " *Strong,* 952 F.Supp. at 176 (quoting *Koehler,* 973 F.2d at 134–35). Pursuant to the district court's decision, the Parole Commission converted Strong's special parole term to a regular parole term on January 7, 1997.

## II. DISCUSSION

■ The circuit courts are split over the question at issue in this appeal. Two circuit courts, the D.C. Circuit and the 8th Circuit, have held that the United States Parole Commission does have authority to reimpose a term of special rather than regular parole after revocation. *See Billis v. United States,* 83 F.3d 209 (8th Cir.1996) (per curiam); *United States Parole Comm'n v. Williams,* 54 F.3d 820 (D.C.Cir.1995). Four circuits have reached the opposite conclusion. *See United States v. Robinson,* 106 F.3d 610 (4th Cir.1997); *Fowler v. United States Parole Comm'n,* 94 F.3d 835 (3d Cir.1996); *Evans v. United States Parole Comm'n,* 78 F.3d 262 (7th Cir.1996); *Artuso v. Hall,* 74 F.3d 68 (5th Cir.1996). In addition to the decision of the district court, one other district court opinion in our circuit holds that the parole board may not reimpose special parole after it has been revoked. *See Caldwell v. Spears,* 973 F.Supp. 406 (S.D.N.Y.1997).

The statutory authority for revoking special parole is contained in former 21 U.S.C. § 841(c) (1982 ed.) (repealed 1984). Although this statute was repealed by the Sentencing Reform Act of 1984, it still governs convictions for offenses committed before November 1, 1987, as in this case. *See* Pub.L. No. 98–473, tit. II, § 224(a)(6), 98 Stat. 1837, 2030 (1984). Section 841(c) read,

---

1. Strong had also challenged the district court's continued jurisdiction over him after revocation of his initial special parole term. The district court rejected this claim, and Strong has not cross-appealed.

A special parole term imposed under this section ... may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term provided for in this section or section 845 of this title shall be in addition to, and not in lieu of, any other parole provided for by law.

The Parole Commission, acting according to a specific grant of statutory authority, 18 U.S.C. § 4203(a)(1) (repealed), has promulgated regulations interpreting this section to allow the Parole Commission to re-parole to special parole. *See* 28 C.F.R. § 2.57(c) (1997).

■ In interpreting a statute, we begin with its text. *See Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986). The statute at issue provides for revocation of special parole if violated, resulting in a "new term of imprisonment." In construing a nearly identical statute governing supervised release, 18 U.S.C. § 3583(e)(3),[2] this Court held that the term "revoke" had the plain meaning of " 'to cancel or rescind.' " *Koehler,* 973 F.2d at 135 (quoting *United States v. Holmes,* 954 F.2d 270, 272 (5th Cir.1992)). Therefore, we found that a district court had no authority to reimpose a term of supervised release once the original term had been revoked.[3] *Id.* at 134–35. A majority of our sister circuits have also found that the absence of any specific grant of authority to reimpose supervised release under § 3583(e)(3) meant that

Congress did not intend that courts have such authority once a supervised release term had been revoked. *See, e.g., United States v. Malesic,* 18 F.3d 205, 206–07 (3d Cir.1994); *United States v. Truss,* 4 F.3d 437 (6th Cir.1993); *United States v. McGee,* 981 F.2d 271 (7th Cir.1992); *United States v. Cooper,* 962 F.2d 339, 341–42 (4th Cir.1992); *Holmes,* 954 F.2d at 271–73; *United States v. Behnezhad,* 907 F.2d 896, 898–99 (9th Cir. 1990); *but see United States v. O'Neil,* 11 F.3d 292 (1st Cir.1993); *United States v. Schrader,* 973 F.2d 623 (8th Cir.1992).

■ Although § 3583(e)(3) was enacted seventeen years after § 841(c), we find compelling reasons to interpret the two sections together. Indeed, almost every circuit court to address this issue has relied on a prior interpretation of § 3583(e)(3) in analyzing § 841(c). *See, e.g., Robinson,* 106 F.3d at 612; *Billis,* 83 F.3d at 211 (relying in part on an earlier interpretation of § 3583 in finding that the Parole Commission could impose a subsequent term of special parole after revocation); *Artuso,* 74 F.3d at 71; *but cf. Williams,* 54 F.3d at 824 (distinguishing the language of § 841(c) from § 3583(e)(3)). Under the Sentencing Reform Act of 1984, supervised release replaced special parole, and is similar in many ways except that supervised release is administered by the judicial branch and not the Parole Commission. Congress instituted the change by "substituting the words 'supervised release' for 'special parole' throughout the United States Code and adding new provisions governing the termination of supervised release by district courts." *Evans,* 78 F.3d at 264. The language of § 3583(e)(3) is substantially similar to § 841(c) in that Congress provides for "revocation" of a statutorily-created sentence without granting any explicit authority to

---

**2.** Section 3583(e) provides that a court may:
(1) terminate a term of supervised release and discharge the defendant released ...;
(2) extend a term of supervised release ... [and] modify, reduce, or enlarge the conditions of supervised release ...;
(3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release ...; or
(4) order the defendant to remain at his place of residence....

**3.** Although Congress amended § 3583 in 1994 to allow a court to reimpose supervised release after revocation, *see* 18 U.S.C. § 3583(h) (1994), we may still rely on the reasoning underlying our prior construction of the statute. As the *Evans* court explained, "a change in statutory language——or in this case, a new statutory section—does not imply that the exegesis of the prior law was mistaken." 78 F.3d at 266.

reimpose that sentence. As the Sixth Circuit has noted,

> While it is certainly undeniable that there are small variations in the way the two programs are handled, and in the entities which handle them, these are mere 'distinction[s] without a difference.' The Parole Commission is not able to point to differences between the two types of post-release supervision that would justify employing radically different definitions of the word 'revoke.'

*Robinson,* 106 F.3d at 612 (internal citation omitted). Because of the similar language and purpose of § 3583 and § 841, we find, in accordance with every other circuit that has interpreted § 3583 to find no authority to reimpose supervised release, that § 841(c) grants no authority to reimpose special parole.

■ Instead, Congress authorized only a "new term of imprisonment" after revocation, which could include non-custodial supervision. Since it is the sentencing judge, rather than the Parole Commission, who imposes special parole and selects its length, the Parole Commission does not have the power to create additional terms of special parole. *See Evans,* 78 F.3d at 265 ("The Parole Commission cannot 'impose' a term of special parole any more than it can 'sentence' a defendant to prison."). The Parole Commission's authority is limited to imposing traditional parole in lieu of a regular term of imprisonment.

The Parole Commission urges us to adopt the contrary reasoning of the D.C. Circuit in *Williams.* The D.C. Circuit interpreted § 841(c) in light of the Parole Commission's longstanding practice of revoking and reinstating regular parole without any explicit statutory authority to do so. The *Williams* court found that, regardless of its meaning in § 3583(e)(3), the term "revoke" in § 841 did not cancel the Parole Commission's authority to reinstate a subsequent term of special parole because " 'prior to the sea change instituted by the Sentencing Reform Act, it was widely understood that any of the existing forms of non-detentive monitoring [including parole] could follow a post-revocation sentence of imprisonment.' " *Williams,* 54

F.3d at 823–24 (quoting *O'Neil,* 11 F.3d at 298). However, we agree with the *Fowler* court that this analysis begs the question whether special parole, as distinguished from regular parole, was among the options available to the Parole Commission. *See Fowler,* 94 F.3d at 840.

The Parole Commission also argues that it would be anomalous to allow parolees to convert special parole sentences into regular parole by violating the terms of the special parole. It claims that to avoid such a result, it may hesitate to re-parole offenders who have had their special parole terms revoked. This consequence, if true, is unfortunate. However, as a policy consideration, the argument is best addressed to Congress, which wrote the statute.

■ Since we find that § 841(c) is unambiguous on its face, we decline to defer to the Parole Commission's regulations advancing a conflicting interpretation. Under *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), we accord deference to agency regulations only to fill gaps or resolve ambiguities in a statute. We need not defer to administrative interpretations or regulations that are based on an impermissible construction of the statutory language. *See Fowler,* 94 F.3d at 841 (stating that such a regulation or interpretation is invalid).

### III. CONCLUSION

Based on the plain meaning of the statute and the persuasive reasoning of the majority of the circuit courts to address this issue, we affirm the holding of the district court that the Parole Commission lacked authority to re-parole Strong to special parole and that he was entitled to a writ of habeas corpus on this basis.