**Ronald RICH, Petitioner–Appellant,**

v.

**Stephen MARANVILLE, Respondent–Appellee.**

**Docket No. 03–2451.**

United States Court of Appeals, Second Circuit.

Argued: Jan. 5, 2004.

Decided: May 20, 2004.

moneys from time to time due or to become due to [IVI] by Brasoil under [the P–19 Contract]." 219 F.Supp.2d at 467.

Angela L. Pitts, Burlington, VT (Alexander Bunin, Federal Public Defender, Districts of Northern New York and Vermont; Barbara E. O'Connor, on the brief), for Petitioner–Appellant.

William B. Darrow, Burlington, VT (Peter W. Hall, United States Attorney for the District of Vermont; Paul J. Van De Graaf, Chief, Criminal Division), for Respondent–Appellee.

Before: FEINBERG, WESLEY, Circuit Judges, and PAULEY,* District Judge.

* The Honorable William H. Pauley III, of the United States District Court for the Southern District of New York, sitting by designation.

FEINBERG, Circuit Judge.

Ronald Rich appeals from a decision of the United States District Court for the District of Vermont (William K. Sessions III, J.) denying his petition for a writ of habeas corpus. Rich is serving parole under the supervision of the United States Parole Commission as a result of a 1985 narcotics conviction.

This case arises out of a series of legislative acts enacted, repealed or replaced over a period of more than 20 years. Fundamentally, Rich's appeal asks us to interpret the word "revoke" in the special parole statute, 21 U.S.C. § 841(c) (1982 ed.) (repealed 1984), a statute repealed 20 years ago. In order to decide this issue, we must determine whether our decision in *Strong v. United States Parole Commission,* 141 F.3d 429 (2d Cir.1998), interpreting that statute, has been invalidated by the Supreme Court's decision in *Johnson v. United States,* 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000), interpreting a similar statute, 18 U.S.C. § 3583(e) (1988 & Supp. II 1990), dealing with supervised release. The peculiarities of Rich's particular situation and its relationship to the statutes in question, however, require us first to recount both Rich's long history of parole violations and the zig-zagging history of the interpretation of these statutes by the Parole Commission, the Circuit Courts and the Supreme Court. Only by understanding these two histories can one understand why Rich remains under government supervision almost 20 years after he was first sentenced, and why he will continue to be either on special parole or in government custody for some time to come.

For the reasons stated below, we affirm the district court's decision.

## I. Background

Rich has had a long history of violating parole. In December 1985, the district court sentenced Rich to two concurrent 10–year terms of imprisonment followed by an eight-year term of special parole for conspiracy to distribute and possess with intent to distribute cocaine. Special parole, part of the parole regime abolished by the Sentencing Reform Act of 1984,[1] was a special sanction for drug offenders. "It differs from regular parole in three respects: 'first, special parole follows the term of imprisonment, while regular parole entails release before the end of the term; second, special parole was imposed, and its length selected, by the district judge rather than by the Parole Commission;' third, if the conditions of special parole are violated, the parolee is returned to prison to serve the entire special parole term, and receives no credit for his time spent in non-custodial supervision, or 'street time.'" *Strong*, 141 F.3d at 431 (quoting *Evans v. United States Parole Comm'n*, 78 F.3d 262, 263 (7th Cir.1996)); see also *United States v. Cuero–Flores*, 276 F.3d 113, 116 (2d Cir.2002). Pursuant to the Sentencing Reform Act of 1984, special parole was replaced by supervised release. *Gozlon–Peretz*, 498 U.S. at 400, 111 S.Ct. 840; *Evans*, 78 F.3d at 264.

In 1991, before the end of Rich's original 10–year prison term, the Parole Commission released him on regular parole. Rich, however, violated the terms of his parole and in 1993 was reincarcerated for most of the remainder of his 10–year term of imprisonment. After Rich's prison term ended in 1994, he began his eight-year term of special parole.

In 1996, the Parole Commission revoked Rich's special parole as a result of a parole violation and ordered him to serve 16 months in prison. Pursuant to Commission regulations then in effect, see 28 C.F.R. § 2.57(c) (1997), Rich was to resume special parole upon release. Consistent with the special parole statute, 21 U.S.C. § 841(c), the Commission ordered that Rich receive no credit for time he had spent on special parole prior to the revocation ("street time") and that his eight-year term of special parole be diminished only by the 16 months he would spend in prison.

That same year, the United States Court of Appeals for the Third Circuit held in *Fowler v. U.S. Parole Commission*, 94 F.3d 835 (3d Cir.1996), that when a special parole term is revoked that special parole term ceases to exist. If a special parole violator is incarcerated for less than the full term of his special parole, the court held, he serves the remainder of that term on regular rather than special parole. *Id.* at 840. Rich was then incarcerated in Pennsylvania, and the Parole Commission determined that *Fowler* controlled his status. In December 1996, the Commission converted the unserved portion of Rich's special parole term to regular parole.

In 2000, however, while Rich was again on parole, the Supreme Court held in *Johnson* that for the purposes of supervised release (the successor to special parole), "revoke" means "suspend" rather than "annul" and that a term of supervised release can resume following revocation and incarceration. *Johnson*, 529 U.S. at 704–13, 120 S.Ct. 1795. In February 2001, the Commission informed Rich that it had determined that *Johnson* invalidated

---

1. The Sentencing Reform Act of 1984 abolished all forms of federal parole for offenses committed after November 1, 1987. See *United States v. Reyes*, 283 F.3d 446, 456 n. 2 (2d Cir.2002); see also *Gozlon–Peretz v. United States*, 498 U.S. 395, 397, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991).

*Fowler* and that it was thus vacating its own 1996 decision converting Rich's unserved term from special to regular parole. Accordingly, the parole Rich was then serving was special, rather than regular, parole.

In July 2001, Rich's special parole was again revoked for driving while intoxicated and failing to comply with a special alcohol aftercare condition of his parole. The Commission ordered him to serve nine months in prison. Because Rich's parole had been converted back to special parole in February 2001, the Commission ordered his street time forfeited and ordered him to resume special parole following his incarceration. The termination of Rich's special parole term was pushed back to August 27, 2007.

In late 2002, Rich filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the Commission's 2001 decision converting his regular parole back to special parole and the resulting forfeiture of almost four years of street time following its revocation. Rich argued that pursuant to this court's 1998 decision in *Strong* (a decision similar to *Fowler*), his special parole, once revoked, was terminated and could not be reimposed by the Parole Commission. He argued that the Supreme Court's 2000 decision in *Johnson* controlled only the interpretation of the supervised release statute, 18 U.S.C. § 3583, and that *Strong*'s interpretation of the special parole statute remained valid law.

In July 2003, the Vermont district court[2] denied Rich's petition. In a thorough opinion, Judge Sessions held that the supervised release and special parole stat-

utes were substantially similar and that *Johnson* had invalidated *Strong*. The judge held that the Commission had thus correctly interpreted *Johnson* as allowing the reimposition of a special parole term following its revocation.

This appeal followed.[3]

## II. Discussion

### A. Pre-*Johnson* interpretation of the special parole statute

The central question in this case is the proper interpretation of the word "revoked" in the special parole statute, 21 U.S.C. § 841(c). Pursuant to that section:

A special parole term imposed under this section ... may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment.

The Parole Commission initially interpreted § 841(c) as allowing the Parole Commission to reinstitute special parole following a revocation, and acting under its statutory authority, 18 U.S.C. § 4203(a)(1) (repealed), the Commission promulgated regulations to that effect. See 28 C.F.R. § 2.57(c) (1997).

This interpretation was brought into question when a number of circuits, including this one, held that the successor supervised release statute, § 3583, prohibited

---

**2.** Rich was incarcerated in Vermont when he filed the petition.

**3.** At the time Rich filed his habeas petition, a third revocation of his special parole arising

out of another arrest for driving while intoxicated was pending. Rich's special parole was again revoked and the Commission ordered him to serve another prison term (16 months).

the reimposition of supervised release after its revocation. See *United States v. Malesic*, 18 F.3d 205 (3d Cir.1994); *United States v. Truss*, 4 F.3d 437 (6th Cir.1993); *United States v. Rockwell*, 984 F.2d 1112 (10th Cir.1993); *United States v. Tatum*, 998 F.2d 893 (11th Cir.1993); *United States v. Koehler*, 973 F.2d 132 (2d Cir. 1992); *United States v. Cooper*, 962 F.2d 339 (4th Cir.1992); *United States v. Holmes*, 954 F.2d 270, 271–73 (5th Cir. 1992); *United States v. Behnezhad*, 907 F.2d 896 (9th Cir.1990); but see *United States v. O'Neil*, 11 F.3d 292 (1st Cir.1993) (concluding that courts do have power to reimpose supervised release); *United States v. Schrader*, 973 F.2d 623 (8th Cir. 1992) (same). According to the version of the supervised release statute then in effect, a district court could:

> (1) terminate a term of supervised release and discharge the person released at any time after the expiration of one year of supervised release ...; (2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release ...; (3) revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision, ...; or (4) order the person to remain at his place of residence ....

18 U.S.C. § 3583(e). In *Koehler*, we quoted approvingly from the Fifth Circuit's opinion in *United States v. Holmes*, 954 F.2d at 272, holding that:

> Section 3583(e)(3) authorizes the district court to "revoke" a term of supervised release. "Revoke" generally means to cancel or rescind. Once a term of su-

pervised release has been revoked under § 3583(e)(3), there is nothing left to extend, modify, reduce, or enlarge under § 3583(e)(2). The term of release no longer exists. Thus regardless of whether the options available under § 3583(e) could otherwise be used together, or in succession, the revocation and extension options are by their very nature mutually exclusive.

*Koehler*, 973 F.2d at 135. Following this logic, we held in that case that "the district court was without authority under 18 U.S.C. § 3583(e) (1988 & Supp. II 1990) to reimpose a term of supervised release after revoking the original term and imposing a term of imprisonment." *Id.* at 133.

In *Strong*, we extended this logic to the special parole statute and held that the Parole Commission lacked authority to reimpose special parole after a revocation and incarceration. *Strong*, 141 F.3d at 433. We explained that "[a]lthough § 3583(e)(3) was enacted seventeen years after § 841(c), we [found] compelling reasons to interpret the two sections together." *Id.* at 432. We noted that "[u]nder the Sentencing Reform Act of 1984, supervised release replaced special parole, and is similar in many ways except that supervised release is administered by the judicial branch and not the Parole Commission." *Id.* Moreover, "[t]he language of § 3583(e)(3) is substantially similar to § 841(c) in that Congress provides for 'revocation' of a statutorily-created sentence without granting any explicit authority to reimpose that sentence." *Id.* at 432–33. "Because of the similar language and purpose of § 3583 and § 841," we thus held, "in accordance with every other circuit that has interpreted § 3583 to find no authority to reimpose supervised release, that § 841(c) grants no authority to reimpose special parole." *Id.* at 433. See also *United States v. Robinson*, 106 F.3d 610 (4th Cir.1997); *Fowler*, 94 F.3d 835; *Ev-*

ans, 78 F.3d 262; *Artuso v. Hall*, 74 F.3d 68 (5th Cir.1996). But see *Billis v. United States*, 83 F.3d 209 (8th Cir.1996) (per curiam) (holding that the Commission does have the authority to reimpose a special parole term after revocation); *United States Parole Comm'n v. Williams*, 54 F.3d 820 (D.C.Cir.1995).

B. The Supreme Court's decision in *Johnson*

In 2000, however, the Supreme Court considered the meaning of the supervised release statute and rejected the interpretation adopted by the majority of circuits and by this court in *Koehler*. The Court recognized that if it "were to concentrate exclusively on the verb 'revoke,' [it] would not detect any suggestion that the reincarceration might be followed by another term of supervised release, the conventional understanding of revoke being simply 'to annul by recalling or taking back.'" *Johnson*, 529 U.S. at 704, 120 S.Ct. 1795 (quoting Webster's Third New International Dictionary 1944 (1981)). The Court found "reasons, nonetheless, to think that the option of further supervised release was intended." *Id.*

Looking first to the text of the statute, the Court noted the apparent distinction between the word "terminate" used in § 3583(e)(1) and the word "revoke" used in § 3583(e)(3).[4] *Id.* In § 3583(e)(1), Congress authorized a district court to "terminate a term of supervised release and discharge the person released ... if it is satisfied that such action is warranted by the conduct of the person released and the interest of justice." The Court noted that, "[t]his is an unequivocal provision for end-

ing the term of supervised release without the possibility of its reimposition or continuation at a later time." *Johnson*, 529 U.S. at 704, 120 S.Ct. 1795. Had Congress intended § 3583(e)(3) to preclude any possibility of later supervised release, the Court concluded, "it would have been natural for Congress to write in like terms," and use "terminate" rather than "revoke." *Id.* Congress' decision to use a different word, "left the door open to a reading of subsection (3) that would not preclude further supervised release after an initial revocation." *Id.* at 705, 120 S.Ct. 1795. Similarly, § 3583(e)(3) authorizes a district court to "require the person to serve in prison all or part of the term of supervised release." The Court reasoned that "if 'the term of imprisonment' is being served, in whole or in part, in prison, then something about the term of supervised release survives the preceding order of revocation." *Johnson*, 529 U.S. at 705, 120 S.Ct. 1795.

Moreover, although the conventional meaning of "revoke" would be "annul," there is support for another less conventional meaning. The Court pointed out that the Webster's Third New International Dictionary provides "to call or summon back" as a possible definition for "revoke." *Id.* at 706, 120 S.Ct. 1795 (quoting Webster's at 1944). The dictionary "gives 'recall' as a synonym and comments that 'RECALL in this sense indicates a calling back, suspending, or abrogating, either finally as erroneous or ill-advised or tentatively for deliberation ....'" *Id.* (quoting Webster's at 1944). Understood this way, "revoke" would not carry the implication

---

**4.** Section 3583(e)(1) provides that "[t]he court may ... *terminate* a term of supervised release and discharge the person released at any time after the expiration of one year of supervised release ...," (emphasis added). Section 3583(e)(3) provides that "[t]he court

may ... *revoke* a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision, ...," (emphasis added). See supra pp. 86–87 for the statutory text.

that further supervised release is forbidden.

Finally, the Court noted that interpreting "revoke" in a way that allows courts to reimpose supervised release after revocation "enjoys the virtue of serving the evident congressional purpose." *Id.* at 708, 120 S.Ct. 1795. The Court explained that "[t]he congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition to liberty." *Id.* at 708–09, 120 S.Ct. 1795. Moreover, "Congress aimed . . . to use the district court's discretionary judgment to allocate supervision to those releasees who needed it most." *Id.* at 709, 120 S.Ct. 1795. Interpreting "revoke" as "annul" would have the counterintuitive effect of providing less rather than more supervision for one who violates the term of his release. As the Court explained:

> A violation of the terms of supervised release tends to confirm the judgment that help was necessary, and if any prisoner might profit from the decompression stage of supervised release, no prisoner needs it more than one who has already tried liberty and failed. He is the problem case among problem cases, and a Congress asserting that every releasee who does need supervision will receive it, seems very unlikely to have meant to compel the courts to wash their hands of the worst cases at the end of reimprisonment.

*Id.* at 709–10, 120 S.Ct. 1795 (internal citation and quotation marks omitted).

C. Applying *Johnson* to the present case

The question now before us is whether our decision in *Strong,* holding that a revoked special parole term could not be reimposed, remains valid law after *Johnson.* We conclude that it does not. Our decision in *Strong* was based entirely on our interpretation of the similar supervised release statute in *Koehler.* See Strong, 141 F.3d at 433. That interpretation has now been rejected by the Court.

More importantly, although *Johnson* dealt only with supervised release, its logic extends to special parole as well. First, as we noted in *Strong,* there are compelling reasons to interpret the two statutes together. *Id.* at 432. Supervised release replaced special parole and the two statutes use substantially similar language. *Id.* It seems reasonable that Congress would have intended the word "revoke" to have the same meaning in both statutes. *Id.* Second, although the special parole statute, § 841, does not contain the textual inconsistency present in the supervised release statute— § 841 contains no provision regarding termination—the Court's interpretation of that inconsistency dictates the meaning of the word "revoke" in both statutes. In *Johnson,* the Court concluded that Congress used the word "terminate" in § 3583(e)(1) to signify the ending of a term of supervised release without the possibility of its reimposition or continuation. *Johnson,* 529 U.S. at 704, 120 S.Ct. 1795. Congress' decision to use "revoke" in § 3583(e)(3) demonstrated its belief that the word carried a different meaning, that when a term of supervised release is revoked it does not cease to exist and can be reimposed. *Id.* at 705, 120 S.Ct. 1795. Similarly, Congress' decision to add the word "terminate" in § 3583 must demonstrate that it believed the language of § 841 insufficient to signify the complete annulment of a term it sought to authorize in § 3853(1). Therefore, Congress must have understood the revocation of special parole authorized by § 841(c) as something less than total annulment of that term.

Third, the policy considerations that led the *Johnson* court to believe Congress meant to allow the reimposition of super-

vised release following a revocation are equally applicable to special parole. The imposition of a special parole term, like that of a supervised release term, reflects Congress and the sentencing court's judgment that a particular offender requires stricter supervision.[5] As with supervised release, a violation of special parole "tends to confirm the judgment that help was necessary," *id.* at 709, 120 S.Ct. 1795, and demonstrates the need for more rather than less supervision in the future. As the *Johnson* court explained, "no prisoner needs [supervision] more than the one who has already tried liberty and failed." *Id.* These considerations strongly suggest that Congress intended special parole to survive revocation. Interpreting "revoke" as "annul" rather than "suspend" would have the counterintuitive effect of allowing a special parole violator to attain less stringent regular parole terms, not as a result of good behavior, but instead as a result of a special parole violation.[6]

Rich nonetheless argues that *Johnson* is inapposite. Rich claims that *Johnson* addressed only the authority of the district court to reimpose a term of supervised release and not the authority of the Parole Commission to reimpose special parole. Rich points to our statement in *Strong* that "[s]ince it is the sentencing judge, rather than the Parole Commission, who imposes special parole and selects its length, the Parole Commission does not have the power to create additional terms of special parole." *Strong*, 141 F.3d at 433.

Rich misapprehends the impact of *Johnson* and the context of our statement in *Strong*. In *Strong*, having defined "revoke" as "annul," we concluded that a special parole term ceases to exist upon revocation. We thus noted that the statute did not confer upon the Commission the authority to create a new term of special parole. By defining "revoke" as "suspend" rather than "annul," however, the *Johnson* court eliminated any concerns about the Parole Commission's authority. The district court creates a term of special parole. Under the reasoning of *Johnson*, when special parole is revoked that term is suspended and continues to exist. The Commission thus creates nothing when it reimposes that court-created term of special parole after revocation and incarceration.

■ For all these reasons, we now hold that *Strong* was abrogated by *Johnson* and that the Commission may reimpose special parole following revocation and incarceration pursuant to 841(c).[7] The Commission was within its authority when it reconvert-

---

5. Rich's history of parole violations demonstrates the wisdom of that judgment in his case.

6. For example, suppose a person was sentenced to a 10–year special parole term. He violates the terms of special parole after two years, and the Parole Commission orders him to serve 12 months in prison. If "revoke" is interpreted as "annul," that person would be released on regular parole at the end of the 12–month prison term, even though absent the violation, he would have had 7 more years of special parole to serve.

It should be noted, however, that this is only the case if special parole violators are ordered to serve less than their full term of special parole in prison following revocation. As Justice Scalia pointed out in his dissent in *Johnson*, courts could order a violator incarcerated for the entire term of supervision, a reaction to a violation that could in no way be seen as a reward for bad behavior. *Johnson*, 529 U.S. at 724, 120 S.Ct. 1795.

7. Although a panel of this court cannot ordinarily overrule the decision of a prior panel, "that rule does not apply where an intervening Supreme Court decision casts doubt on the prior ruling," as is the case here. *Finkel v. Stratton Corp.*, 962 F.2d 169, 174–75 (2d Cir.1992).

ed Rich's regular parole back to special parole.

### III.   Conclusion

We have considered all of Rich's arguments and have found them to be without merit.   The judgment of the district court rejecting Rich's petition for habeas corpus is hereby affirmed.