**Revised August 11, 2017**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40317

United States Court of Appeals
Fif h Circuit

**FILED**

August 11, 2017

Lyle W. Cayce
Clerk

FREDERICK JAMES FILLINGHAM,

Petitioner – Appellant,

v.

UNITED STATES OF AMERICA,

Respondent – Appellee.

Appeal from the United States District Court
for the Eastern District of Texas

Before JOLLY, ELROD, Circuit Judges, and STARRETT, District Judge.[*]
JENNIFER WALKER ELROD, Circuit Judge:

Petitioner Frederick James Fillingham, a federal inmate proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The district court denied Fillingham's petition. Because each of Fillingham's claims is not administratively exhausted, lacks merit, or is raised for the first time on appeal, we AFFIRM the district court's dismissal of Fillingham's § 2241 petition. We also DENY Fillingham's motion for appointment of counsel and motion for compensation.

---

[*] The Honorable Keith Starrett, of the United States District Court for the Southern District of Mississippi, sitting by designation.

No. 16-40317

## I.

In 1984, in the United States District Court for the District of South Carolina, Petitioner Frederick James Fillingham pleaded guilty to importing 7,000 pounds of marijuana. Specifically, Fillingham pleaded guilty to two counts: one count charging him with violating 21 U.S.C. §§ 952(a) and 960 and another count charging him with violating 21 U.S.C. § 841(a)(1). The district court imposed a sentence of two years of imprisonment and fifteen years of special parole[1] for one count and a suspended sentence of five years of imprisonment, five years of probation, and fifteen years of special parole on the other count.

Over the course of the twenty-five years following Fillingham's original conviction, he committed a series of other violations which resulted in additional convictions as well as revocation of his parole. Fillingham began serving his term of special parole for his original conviction in 1993. However, his special parole was revoked in 1996 after he pleaded guilty in a California state court to "Inflict[ing] Corporal Injury on a Spouse or Co-habitant." Later in 1996, Fillingham was released on regular parole because the United States Parole Commission had converted his special parole to regular parole based on this court's decision in *Artuso v. Hall*, 74 F.3d 68 (5th Cir. 1996). The Commission later vacated its conversion of Fillingham's special parole to

---

[1] Special parole is a type of post-release supervision for drug offenders. It was part of the parole regime abolished by the Sentencing Reform Act of 1984. It differed from regular parole in three respects: first, special parole follows the term of imprisonment, while a parolee under regular parole is released before the end of his term of imprisonment; second, special parole is imposed by the district court judge rather than by the United States Parole Commission; and third, if the parolee violates the conditions of special parole, he is returned to prison to serve the entire special parole term and does not receive credit for his time spent in non-custodial supervision. *See Rich v. Maranville*, 369 F.3d 83, 85 (2d Cir. 2004). Pursuant to the Sentencing Reform Act of 1984, special parole was replaced by supervised release. *See Gozlon-Peretz v. United States*, 498 U.S. 395, 400 (1991).

regular parole based on the United States Supreme Court's decision in *Johnson v. United States*, 529 U.S. 694 (2000).     In 2000, the Commission issued a revocation warrant for Fillingham's arrest based on technical parole violations. Before the warrant could be executed, however, Fillingham was caught smuggling 396 kilograms of cocaine into the United Kingdom. Fillingham was subsequently convicted in the United Kingdom and sentenced to a term of eighteen years of imprisonment. The Commission's warrant for Fillingham's arrest was finally executed in 2009.

At a hearing in 2010, the Commission found that Fillingham had committed technical parole violations, violated the conditions of his parole regarding drug use, and committed a third violation—a law violation—based on his United Kingdom conviction. Accordingly, the Commission revoked Fillingham's special parole, denied him credit for the time he spent on special parole, and ordered that he be imprisoned until the expiration of his term of special parole. The Commission imposed the maximum revocation sentence, relying heavily on Fillingham's foreign conviction.

Fillingham subsequently filed a petition under 28 U.S.C. § 2241 in the United States District Court for the Eastern District of Texas challenging his original criminal conviction, his parole revocation, and the Commission and Bureau of Prison's calculation of his sentence. Specifically, Fillingham raised the following claims: (1) counsel was ineffective in his original criminal case and in his parole revocation proceeding; (2) the Commission violated the *Ex Post Facto* Clause by retroactively applying its guidelines and administrative processes, reimposing special parole after he was released on regular parole, and denying him credit for time he spent on special parole; (3) the Commission denied him due process by using his foreign conviction to revoke his special parole and impose the maximum revocation sentence; (4) his property was unlawfully seized; and (5) the Commission and the Bureau of Prison's

No. 16-40317

calculation denied him credit towards his sentence for foreign jail time. The district court dismissed Fillingham's § 2241 petition, and Fillingham filed a timely notice of appeal.

## II.

The district court dismissed the following claims for failure to exhaust administrative remedies: (1) ineffective assistance of counsel in the original criminal case and parole revocation proceeding; and (2) violation of the *Ex Post Facto* Clause based on the Commission's retroactive application of its guidelines and administrative processes. Fillingham argues the district court erred in dismissing these claims. We review the dismissal of a claim for failure to exhaust administrative remedies for abuse of discretion. *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012). "[A] federal prisoner filing a § 2241 petition must first pursue all available administrative remedies." *Id.* While exceptions to the exhaustion requirement do exist, they apply only in "extraordinary circumstances," and the burden of proof for demonstrating the futility of administrative review rests with the petitioner. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). Because Fillingham did not present these challenged claims to the Commission or the Bureau of Prisons and because Fillingham has not demonstrated that an exception to the exhaustion requirement applies in this case, the district court did not abuse its discretion in dismissing these claims for failure to exhaust administrative remedies.[2] *See id.*

---

[2] Arguably, Fillingham could not seek administrative review of his claim for ineffective assistance of counsel in his original criminal case. *See Gallegos-Hernandez*, 688 F.3d at 194. However, as we discuss below in Part IV *infra*, the district court correctly concluded in the alternative that this claim was not cognizable under § 2241.

No. 16-40317

### III.

We next address Fillingham's claims relating to his parole revocation. We review the district court's findings of fact for clear error and issues of law *de novo*. *Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008). To obtain relief under § 2241, the prisoner must establish a violation of either the Constitution or federal law. 28 U.S.C. § 2241(c)(3).

### A.

Fillingham first argues that the Commission was not authorized to reimpose special parole given our decision in *Artuso*, which he contends was unaffected by the Supreme Court's decision in *Johnson*. He further argues that the Commission violated the *Ex Post Facto* Clause when it reimposed special parole because he automatically forfeited credit for the three-and-a-half years he spent on special parole. We disagree.

In *Artuso*, we held that the Commission lacked authority under the former version of 21 U.S.C. § 841(c) to impose a second term of special parole after it had revoked a first special parole term. 74 F.3d at 71–72. We based our construction of the former version of § 841(c) on our reasoning in *United States v. Holmes*, 954 F.2d 270, 272 (5th Cir. 1992), in which we held that the sentencing court lacked authority under 18 U.S.C. § 3583(e)(3) to impose a second term of supervised release after it had revoked a first supervised release term. *Artuso*, 74 F.3d at 71. After our decisions in *Holmes* and *Artuso*, the Supreme Court abrogated *Holmes* by holding that § 3583(e)(3) permits the reimposition of supervised release. *Johnson*, 529 U.S. at 698–99 & n.2, 713. Fillingham and the government dispute whether *Johnson* undermines this court's holding in *Artuso*.

There is a post-*Johnson* circuit split regarding whether the Commission can reimpose special parole on a defendant. *See Edwards v. Cross*, 801 F.3d 869, 877–79 (7th Cir. 2015) (holding that the Commission cannot reimpose

special parole); *Rich v. Maranville*, 369 F.3d 83, 89–91 (2d Cir. 2004) (holding that the Commission can reimpose special parole). We have not yet considered how *Johnson* affects the Commission's ability to reimpose special parole.  The question now before us is whether our decision in *Artuso*, holding that the Commission cannot reimpose a revoked special parole term, remains valid after *Johnson*. We conclude that it does not.

We find the Second Circuit's reasoning and analysis in *Rich* persuasive. In *Rich*, the Second Circuit held that *Johnson* abrogated the Second Circuit's version of *Artuso* because it was based on an interpretation of the supervised release statute that the Supreme Court held was erroneous. *Rich*, 369 F.3d at 89–90. The Second Circuit held that *Johnson* compels an interpretation of § 841(c) that allows the Commission to "reimpose" special parole after revocation of a special parole term. *Id.* The reimposed special parole term may be the original special parole term less any time spent in custody as a result of revoked special parole. *See Artuso*, 74 F.3d at 69; *Edwards*, 801 F.3d at 872; *Rich*, 369 F.3d at 85.

Analogous to the Second Circuit's decision, our decision in *Artuso* was expressly based on the now-abrogated analysis in *Holmes* of the term "revoke." *Artuso*, 74 F.3d at 71 ("The reasoning of *Holmes* controls our decision in this case. . . . The language of former section 841(c) [governing special parole] is nearly identical to that of section 3583(e)(3) [governing supervised release]. In particular, former section 841(c) and section 3583(e)(3) both used the term revoke in identical contexts to mean cancel or rescind.") (citation omitted). In *Artuso*, we concluded that the word "revoke" meant "cancel" within the context of revoking a special parole term and that once cancelled, any remaining parole would be regular parole and not special parole. *Id.* In *Johnson*, the Supreme Court concluded that under § 3583, the term "revoke" meant "recall," thus revocation of supervised release under the statutory text did not extinguish,

cancel, or terminate a term of supervised release. *Johnson*, 529 U.S. at 704. The Court concluded that once a trial court revokes the supervised release term and imposes a new term of imprisonment, it could impose a subsequent supervised release term. *Id.* at 712. Because we concluded in *Holmes* that the language of § 3583(e) was "nearly identical" to the language in former § 841(c), and because *Holmes* was abrogated by *Johnson*, we adopt the Second Circuit's analysis in *Rich* and hold that the Commission may release a prisoner to a special parole term following revocation.[3]

We also hold that the district court did not err when it determined that the Commission did not violate the *Ex Post Facto* Clause in reimposing special parole. A violation of the Constitution's *Ex Post Facto* Clause occurs where there is an "imposition of a punishment more severe than that assigned by law when the criminal act occurred." *Hallmark v. Johnson,* 118 F.3d 1073, 1077 (5th Cir. 1997). The Commission decided to convert Fillingham's special parole term to a term of regular parole based on our decision in *Artuso*. The Commission later vacated that decision based on the Supreme Court's decision in *Johnson*. The Commission's action merely corrected an erroneous policy and was not a retroactive change in the law. *See Cortinas v. United States Parole Comm'n*, 938 F.2d 43, 46 (5th Cir. 1991). Converting Fillingham's parole to special parole put his supervision in the same position it would have been at the time he committed his offense, before *Artuso*. Therefore, there has been no change in the law that has been retroactively applied to Fillingham.

---

[3] We note that to hold otherwise would lead to an absurd result. *See Rich*, 369 F.3d at 90 (noting that not allowing the Commission to release a prisoner to a special parole term following revocation would have "the counterintuitive effect of allowing a special parole violator to attain less stringent regular parole terms, not as a result of good behavior, but instead as a result of a special parole violation.").

## B.

Fillingham next argues that the Commission should not have considered his conviction in the United Kingdom in revoking his parole and imposing the maximum revocation sentence. He contends that the Commission is not authorized to revoke parole on the basis of a foreign conviction and that doing so deprives him of due process. None of the authorities Fillingham cites address whether the Commission is authorized to revoke parole on the basis of a foreign conviction. Moreover, the Commission's internal policy manual provides that a foreign conviction generally may be treated as conclusive evidence of a law violation.

Further, Fillingham's due process rights were not infringed upon. *See Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (instructing that "revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply in parole revocations"). Our review of a parole revocation decision "is quite circumscribed," and "[w]e simply ask whether there is some evidence in the record to support the Commission's decision." *Villarreal v. United States Parole Comm'n*, 985 F.2d 835, 839 (5th Cir. 1993). To lawfully revoke parole, the government is not required to have an arrest, a charge, and ultimately a conviction for a new criminal offense. *See id.* Instead, the Commission may consider evidence of dismissed state charges and charges that were subsequently overturned, as long as the acquittal or dismissal did not, as a matter of law, remove all factual support from the parole revocation. *See id.*; *see also Else v. Johnson*, 104 F.3d 82, 83 (5th Cir. 1997). The United Kingdom conviction was "some evidence" to support the Commission's parole revocation decision. The Commission also considered evidence of violations of the terms of parole aside from the United

No. 16-40317

Kingdom conviction, which would have supported a revocation of Fillingham's parole. Accordingly, we affirm the district court's dismissal of this claim.[4]

## C.

Fillingham also argues that the Commission and Bureau of Prisons should have applied credit towards his sentence for the nine years he spent in prison in the United Kingdom. He specifically contends that the Commission violated the Double Jeopardy Clause by imposing multiple punishments for the same conduct when it relied on the United Kingdom conviction to revoke his parole and lengthen his sentence while also denying him foreign jail time credit. However, the Double Jeopardy Clause does not apply to parole revocation. *United States v. Whitney*, 649 F.2d 296, 298 (5th Cir. 1981). Fillingham also contends that 18 U.S.C. § 3585(b) does not permit the Bureau of Prisons to deny him credit because this statute was passed after his original criminal conviction.[5] The predecessor to § 3585(b), former 18 U.S.C. § 3568, required that a federal prisoner receive "credit toward service of his sentence for any days spent in custody in connection with the offenses or acts for which

---

[4] Fillingham also argues that the Commission should not have considered the United Kingdom conviction because it was the result of a "Majority Jury Verdict" instead of a unanimous jury verdict. However, the government is not required to have a unanimous conviction for a new criminal offense in order to justify revocation. *See, e.g.*, *Villarreal*, 985 F.2d at 839. Fillingham also contends that the United Kingdom conviction is an improper basis upon which to revoke his parole because the Commission allegedly failed to cooperate with the United Kingdom authorities and provide the authorities with records allegedly crucial to his defense. This court, however, is not the proper forum for Fillingham to attack his United Kingdom conviction.

[5] Section 3585(b) states:
(b) Credit for prior custody.—A defendant shall be given credit toward the service of term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
(1) as a result of the offense for which the sentence was imposed; or
(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
that has not been credited against another sentence.
18 U.S.C. § 3585(b).

sentence was imposed." *Ballard v. Blackwell*, 449 F.2d 868, 869 n.1 (5th Cir. 1971). Fillingham offers no argument as to the former § 3568. Because Fillingham was imprisoned abroad for his foreign conviction and not for anything connected "with the offenses or acts for which [his] sentence was imposed," he is not entitled to credit for the time he spent imprisoned in the United Kingdom.

## IV.

We next address Fillingham's challenge to the dismissal of his claims for ineffective assistance of counsel and unlawful seizure of his property in his original criminal case. Fillingham also moves for compensation for his property that was allegedly taken from him without due process. We affirm the district court's dismissal of these claims and deny Fillingham's motion.

28 U.S.C. § 2255 is the primary mechanism for collaterally attacking a federal sentence, and a 28 U.S.C. § 2255 motion must be filed with the sentencing court. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000). Fillingham has filed the motion at issue in this appeal under § 2241. Section 2241 is the proper procedural vehicle for challenging the manner in which the sentence is executed, and a § 2241 petition must be filed in the district of incarceration. *See Pack*, 218 F.3d at 451. However, § 2255(e), known as the savings clause, permits a federal prisoner to challenge the legality of his conviction or sentence in a § 2241 petition when the remedy in § 2255 "is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e).

Fillingham was sentenced by the United States District Court for the District of South Carolina. He has not offered any evidence or argument as to why he satisfies § 2255(e)'s savings clause. The district court correctly concluded that these claims are not cognizable under § 2241 and that it lacked jurisdiction to consider them under § 2255. *See Jeffers v. Chandler*, 253 F.3d 827, 830 (5th Cir. 2001) (noting that "the burden of coming forward with

No. 16-40317

evidence to show the inadequacy or ineffectiveness of a motion under § 2255 rests squarely on the petitioner"). Accordingly, we also deny Fillingham's motion for compensation for his property that was allegedly taken without due process.

## V.

For the first time on appeal, Fillingham appears to assert that he has filed in other cases a complaint under the Freedom of Information Act (FOIA) and a motion for a reduction of sentence under 18 U.S.C. § 3582(c)(2). Fillingham argues that the district court should have resolved these actions as ancillary matters to his § 2241 petition. His FOIA claim, originally filed in the Eastern District of Texas and transferred by the district court for proper venue to the District of South Carolina, was denied on appeal by the Fourth Circuit. Fillingham does not argue, much less demonstrate, that the district court abused its discretion in declining to permit him to amend the instant action to add a FOIA claim. *See Rourke v. Thompson*, 11 F.3d 47, 51 (5th Cir. 1993). Similarly, Fillingham did not raise his claim regarding his § 3582(c)(2) motion in the district court. Therefore, we will not consider it now on appeal. *See Wilson v. Roy*, 643 F.3d 433, 435 n.1 (5th Cir. 2011) (noting that claims raised for the first time on appeal will not be considered). Moreover, such a claim is not cognizable under § 2241. *See* 28 U.S.C. § 2255(e).

## VI.

For the reasons stated above, we AFFIRM the district court's dismissal of Fillingham's claims. We also DENY Fillingham's motion for appointment of counsel and motion for compensation.