In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2205

GEORGE H. EDWARDS, JR.,

*Petitioner-Appellant*,

*v.*

JAMES N. CROSS, Warden, & U.S.
PAROLE COMM'N,

*Respondents-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
Nos. 13-cv-934 & 13-cv-944 — **David R. Herndon**, *Judge.*

ARGUED JANUARY 8, 2015 — DECIDED SEPTEMBER 16, 2015

Before BAUER, MANION, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* George H. Edwards, Jr. appeals
from the district court's denial of his petition for a writ of
habeas corpus. *See* 28 U.S.C. § 2241. He is currently under the
supervision of the United States Parole Commission serving a
term of special parole that stems from a narcotics conviction in
1985. Although Edwards completed his term of imprisonment

for that conviction in 2000, the Parole Commission has responded to his regrettable history of parole violations with repeated reimprisonment and the reimposition of special parole, which remains in force to this day. Edwards maintains that the Parole Commission lacks the authority to reimpose special parole and seeks an order compelling the Commission to convert his current term of special parole to ordinary parole. Edwards' appeal hinges on the definition of the word "revoke" in the special parole statute, *see* 21 U.S.C. § 841(c) (1982 ed.), which was repealed over twenty years ago in 1984, *see* Act of Oct. 12, 1984, Pub. L. No. 98-473, § 224(a)(6). Although we concluded in *Evans v. U.S. Parole Commission*, 78 F.3d 262 (1996), that the Parole Commission could not reimpose special parole after a term of reimprisonment, that conclusion has since been called into question by the Supreme Court's subsequent decision in *Johnson v. United States*, 529 U.S. 694 (2000), interpreting the word "revoke" in 18 U.S.C. § 3583(e) (1988 & Supp. II 1990), a supervised release statute with some similarities to 21 U.S.C. § 841(c). The district court concluded that our interpretation of the word "revoke" in *Evans* was undermined by the Court's holding in *Johnson* and denied Edwards' petition. We conclude that the differences between former § 841(c) and § 3583(e) predominate over the admitted similarities; thus, we hold that our decision in *Evans* interpreting § 841(c) continues to be good law. Accordingly, we vacate and remand the decision of the district court.

I.

In order to understand the issue presented by this case and why Edwards remains under the authority of the Parole Commission over thirty years after his 1985 narcotics convic-

tion, we must recount both the history of Edwards' repeated parole violations and the enactment and repeal of several statutes pertaining to post-imprisonment supervision. Edwards' extended encounter with imprisonment and parole began in 1985 when he was convicted of cocaine distribution and sentenced to fifteen years imprisonment to be followed by ten years of "special parole." *See* § 841(c) (1982 ed.).[1]

Special parole was created in 1970 as a mandatory additional penalty for drug offenses. The Sentencing Reform Act of 1984 eliminated parole (both special and regular), replaced it with supervised release, and repealed 21 U.S.C. § 841. *See United States v. Sandidge*, 784 F.3d 1055, 1067 (7th Cir. 2015) ("We note that the system of supervised release followed the elimination of parole in the federal system."). However, the Parole Commission continues to exercise jurisdiction over the dwindling number of individuals, like Johnson, who committed a federal offense before November 1, 1987, when the Sentencing Reform Act took effect.[2] *E.g.*, *United States v. Wells*,

---

[1]  All citations to § 841(c) refer to the 1982 edition.

[2]  In May 1976, the Parole Commission and Reorganization Act took effect and established the United States Parole Commission as an independent agency within the Department of Justice. Although the Comprehensive Crime Control Act of 1984 provided for the abolition of the Parole Commission in November 1992, Congress has continued to extend the life of the Parole Commission, most recently with the United States Parole Commission Extension Act of 2013, which extends Parole Commission's existence until 2018. *See generally* United States Department of Justice, *History of the Federal Parole System*, 1-3 (May 2003), *available at* http://www.justic.gov/uspc/history.pdf; *see also* H.R. 3190 (113th): United

(continued...)

177 F.3d 603, 607 n.3 (7th Cir. 1999). "Three things are 'special' about special parole: first, special parole follows the term of imprisonment, while regular parole entails release before the end of the term; second, special parole was imposed, and its length selected, by the district judge rather than by the Parole Commission; third, when special parole is revoked, its full length becomes a term of imprisonment." *Evans*, 78 F.3d at 263. Thus, if an individual is reimprisoned for violating special parole, when he is released he must serve the entire original term of the special parole reduced only by the additional time spent in prison—he receives no credit for the "street time" spent on special parole before the violation.

This mechanism is illustrated by Edwards' long history of violating his special parole. In February 2000, Edwards began his term of special parole, which was due to expire in February 2010. In March 2001, he was taken into custody for violating the terms of his parole (by shoplifting, failing a drug test, and failing to provide personal and business records to his parole officer). His special parole was revoked, and he returned to prison on July 26, 2001. He was released from prison in December 2001. At this point, under § 841(c), his special parole reverted to a full ten year term less the time he spent in custody (March to December 2001); no credit was given for the time he had already spent on special parole. Thus, his new parole term was set to expire in March 2011.

---

[2] (...continued)
States Parole Commission Extension Act of 2013, *available at* https://www.govtrack.us/congress/bills/113/hr3190 (last visited Sept. 14, 2015).

But in 2007, Edwards pleaded guilty to one count of wire fraud. He was sentenced to one year and a day in prison to be followed by four years of supervised release. He completed the prison term for wire fraud in December 2007 but remained in prison because the Parole Commission revoked his parole. Reasoning that he had been on special parole when he pleaded guilty in 2007, the Parole Commission added six more years to his sentence to account for the forfeited street time between his December 2001 release from prison (following the first parole revocation) and his 2007 conviction. Edwards' parole term was then set to expire in February 2017.

Edwards challenged the reimposition of special parole following his wire fraud conviction. The Sixth Circuit rejected Edwards' challenge, noting that because he had been convicted of a crime, under current parole law Edwards would have forfeited his street time even if he had been serving regular parole. *See Edwards v. Dewalt*, 681 F.3d 780 (6th Cir. 2012); 28 C.F.R. § 2.52(c)(2) (providing that an ordinary parolee convicted of a new offense while on parole will not receive credit on service of his sentence for time spent on supervision). It thus concluded that it need not decide the "interesting and difficult issue" of whether its own holding that a revoked special parole term could not be reimposed survived the Supreme Court's decision in *Johnson v. United States*, 529 U.S. 694 (2000), interpreting the supervised release statute, 18 U.S.C. § 3583(e) to allow reimposition of supervised release following its revocation. *See Dewalt*, 681 F.3d at 784-85 (citing *Dolfi v. Pontesso*, 156 F.3d 696, 698-99 (6th Cir. 1998) which had held that the Parole Commission lacked authority under 21 U.S.C.

§ 841(c) to impose a new term of special parole after revoking the original term).

Edwards' current situation forces us to confront this "interesting and difficult issue" directly. He was released on parole in 2010 but then sent back to prison in 2013 for again violating the terms of his supervised release (stemming from the wire fraud conviction). Shortly thereafter, the Parole Commission issued a parole-violator warrant (for the same conduct that led to his supervised release revocation) as a detainer against him pending the completion of his sentence for violating the supervised release. *See Matamoros v. Grams*, 706 F.3d 783, 788 (7th Cir. 2013) ("The purpose of [a] detainer is to make sure the U.S. Marshal is notified when [a parolee] is discharged from his … prison sentence so he can be immediately taken into federal custody for a revocation of parole hearing.").

At that time, Edwards filed a petition for a writ of mandamus under 28 U.S.C. § 1361 seeking an order compelling the Parole Commission to conduct a parole termination hearing and terminate his parole violation status and suspend his supervision in the interim. He also filed a petition for a writ of habeas corpus under § 2241, requesting an order compelling warden James Cross to convert his special parole to a regular term of imprisonment and hold a hearing on his parole violation or, in the alternative, terminate his special parole and release him from all conditions of parole. The district court denied Edwards' mandamus petition after concluding that Edwards had not shown that the Parole Commission owed him a duty which it had failed to perform.

It also denied Edwards' habeas petition. The court first rejected Edwards' arguments attacking the Parole Commission's failure to hold a revocation hearing within 90 days of his violation and its failure to hold a dispositional review within 180 days of placing the detainer against him. *See* 18 U.S.C. § 4214(b)(1) (repealed 1984). Finally, on the issue of the reimposition of special parole, the district court declined to address Edwards' argument that the Commission could not re-impose special parole following his third violation because the parole had not yet been revoked. However, the court concluded that such a reimposition of special parole would be unproblematic because the Supreme Court's decision in *Johnson* indirectly abrogated this court's conclusion in *Evans* that release from imprisonment following revocation of special parole must be to regular, not special parole.

## II.

On appeal, Edwards focuses solely on his claim that under *Evans*, the Parole Commission lacks the authority to reimpose special, as opposed to regular, parole once it is revoked. We note at the outset that § 2241 is a proper vehicle for relief because special parole satisfies the "custody" requirement of that statute and Edwards is in essence claiming that he is being kept on special parole in "violation of the Constitution or laws or treaties of the United States"—specifically § 841(c). *See Evans*, 78 F.3d at 264; *see also Edwards*, 681 F.3d at 784 ("Because Edwards is challenging the manner in which his parole is to be served, his claims were properly brought pursuant to the provisions of § 2241.")

The defendants first claim that Edwards has waived his argument about reimposition of special parole. This argument goes nowhere. Not only should his pleadings in the district court be construed liberally because he was proceeding pro se, *e.g.*, *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014), it is clear that he has argued from the beginning that the Parole Commission lacked power to reimpose his term of special parole. The Commission argues that Edwards did not raise his "specific complaint regarding re-imposing special parole" until his reply to the Commission's opposition to his motion for summary judgment. But the Commission itself acknowledges that from the outset Edwards contested its authority to impose another term of special parole. The Commission also notes that it responded to Edwards' (allegedly inadequate) argument with its own "extensive legal argument" as to whether it could reimpose special parole, so there is no question that he provided fair notice of his claim. Thus, his failure to respond to specific arguments by the Commission in a sur-reply (filed in response to Edwards' reply to the Commission's response to his motion for summary judgment) hardly amounts to waiver. *See Sidney Hillman Health Ctr. v. Abbott Lab., Inc.*, 782 F.3d 922, 927 (7th Cir. 2015) ("'[w]aiver is not meant as an overly technical appellate hurdle' and the nuances of a litigant's arguments may differ from their stance in the district court without resulting in waiver.") (quoting *Fox v. Hayes*, 600 F.3d 819, 832 (7th Cir. 2010)).

The Commission also argued that Edwards' claim was not yet ripe for review because he was not yet serving a term of special parole. But given events subsequent to Edwards'

appeal, that argument too goes nowhere. In October 2014, Edwards was scheduled to be released from prison for his supervised release violation, but he remained in prison on the detainer. Although he was still in prison on the detainer when this case was argued, the Parole Commission revoked Edwards' parole approximately one month after oral argument. Because he did not contest that he had violated parole terms, his parole was revoked without a hearing under the expedited revocation procedure. *See* 28 C.F.R. § 2.66 (authorizing revocation decision without hearing in certain circumstances). In the Parole Commission's view, Edwards was then reparoled to special, as opposed to regular parole, for what is now the fourth time—a term of special parole that, without credit for street time, will expire in February 2020. If he is reparoled to regular parole instead, as Edwards insists he must be, that parole will expire in February 2017 because he will receive credit for the three years of "street time" between January 2010 and January 2013.

Whether the Commission has the authority to reimpose a term of special parole depends on the proper interpretation of the word "revoke" in the special parole statute, § 841(c). That section states that:

> A special parole term imposed under this section … may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose

> special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term provided for in this section or section 845 of this title shall be in addition to, and not in lieu of, any other parole provided by law.

The Parole Commission originally interpreted § 841(c) to allow the reimposition of special parole following reimprisonment after a revocation. *See* 28 C.F.R. § 2.57(c) ("Should a parolee violate conditions of release during the Special Parole Term he will be subject to revocation on the Special Parole Term … and subject to reparole or mandatory release under the Special Parole Term.")(promulgated under its statutory authority, 18 U.S.C. § 4203(a)(1) (repealed 1984)).

The authority to reimpose special parole was called into question subsequently when this court and a number of others interpreted 18 U.S.C. § 3583(e)(3), the supervised release statute that replaced § 841(c) to some extent, as prohibiting a district court from reimposing a new term of supervised release after reimprisonment. *See United States v. McGee*, 981 F.2d 271 (7th Cir. 1992) ("Once a court revokes a defendant's supervised release and imprisons him under § 3583(e)(3), no residual term of supervised release survives revocation."), *abrogated by Johnson*, 529 U.S. at 713; *see also United States v. Malesic*, 18 F.3d 205 (3d Cir. 1994), *abrogated by Johnson*, 529 U.S. at 713; *United States v. Truss*, 4 F.3d 437 (6th Cir. 1993), 4 F.3d 437; *United States v. Rockwell*, 984 F.2d 1112 (10th Cir. 1993), *abrogated by Johnson*, 529 U.S. at 713; *United States v. Tatum*, 998 F.2d 893 (11th Cir. 1993), *abrogated by Johnson*, 529 U.S. at 713; *United States v. Koehler*, 973 F.2d 132

(2d Cir. 1992), *abrogated by Johnson*, 529 U.S. at 713; *United States v. Cooper*, 962 F.2d 339 (4th Cir. 1992), *abrogated by Johnson*, 529 U.S. at 713; *United States v. Holmes*, 954 F.2d 270 (5th Cir. 1992), *abrogated by Johnson*, 529 U.S. at 713; *United States v. Behnezhad*, 907 F.2d 896 (9th Cir. 1990), *abrogated by Johnson*, 529 U.S. at 713; *but see United States v. O'Neil*, 11 F.3d 292 (1st Cir. 1993) (concluding that courts do have power to reimpose supervised release); *United States v. Schrader*, 973 F.2d 623 (8th Cir. 1992) (same).

In *McGee*, we confronted the question of whether district courts could reimpose supervised release after revoking it under § 3583(e). *McGee* predated the addition of subsection (h) in 1994, which gives courts express authority to revoke supervised release and impose another term of supervised release following reimprisonment. *See* § 3583(h) ("When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment."). Under § 3583(e), upon finding a supervised release violation, a district court was authorized to (1) terminate a term of supervised release and discharge the person released; (2) "extend a term of supervised release if less than the maximum authorized term was previously imposed, and … modify, reduce, or enlarge the conditions of supervised release … "; or "(3) revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release … without credit for time previously served on postrelease supervision … [.]"

Looking at the text of § 3583(e) and surveying other circuits' analyses, we agreed in *McGee* with the Fifth Circuit and

concluded that the word "revoke" generally means cancel or rescind, and that once a term of supervised release had been "revoked" under § 3583(e)(3) it no longer existed and could not be extended, modified, reduced, or enlarged under § 3583(e)(2). *McGee*, 981 F.2d at 274-75 (citing *Holmes*, 954 F.2d at 272). We also noted that interpreting subsection (e)(3) to allow the district court to replace each revoked term of supervised release with a new combined term of prison and supervised release would open the door to repeated breaches of supervised release and reimprisonment—a scenario we believed created problematic due process concerns. *Id.* at 275.

We thus rejected the more "flexible reading" of § 3583(e)(3) that had been adopted by other circuits that would have allowed a district court to "revoke" a term of supervised release and sentence a defendant to "part of" that term—apportioning the sentence between prison and the remaining supervised release. *See United States v. Boling*, 947 F.2d 1461 (10th Cir. 1991), *overruled by Rockwell*, 984 F.2d at 1115-17, (noting that since *Boling*, seven circuits had explicitly or implicitly concluded that a district court could not impose further supervised release after reincarceration under § 3583(e)); *Schrader*, 973 F.2d at 624-25, *superseded by statute*, § 3583(h). We concluded that such an approach would amount to interpreting "revoke" more like "suspend" and would also "create a grave structural flaw in the statute." *McGee*, 981 F.3d at 275-76. Accordingly, we held that "[o]nce a court revokes a defendant's supervised release and imprisons him under § 3583(e)(3), no residual term of supervised release survives revocation." *McGee*, 981 F.2d at 272, *abrogated by Johnson*, 529 U.S. at 713.

Several years later, we confronted the somewhat related question of whether a term of special parole revoked under § 841(c) could be reimposed after imprisonment in *Evans v. U.S. Parole Comm'n*, 78 F.3d 262 (1996). Although we discuss *Evans* in more detail below, we note here that we concluded in *Evans* that a term of special parole, once revoked, could not be reimposed. *Id.* Like Edwards, the petitioner in *Evans* had repeatedly had his special parole revoked, and argued that once revoked, it could not be reimposed. Relying in part on *McGee* and in part on the language of § 841(c), we agreed and concluded that when special parole is revoked it becomes a regular term of imprisonment, "release from which is normal parole." *Evans*, 78 F.3d at 264. In other words, "once special parole has been revoked, any further release-and-revocation cycle uses the rules for ordinary parole." *Id.* at 266.

Under our holding in *Evans* then, Edwards should now be serving a term of regular, not special, parole. But *Evans'* continued viability was called into question by the Supreme Court's decision in *Johnson v. United States*. As explained above, in *Johnson* the Court rejected *McGee*'s interpretation of § 3583(e)(3).[3] Specifically, the Court in *Johnson* confronted the question, resolved in *McGee*, of whether § 3583(e)(3) permitted

---

[3]   *Johnson* actually involved an Ex Post Facto clause challenge to the application of 18 U.S.C. § 3583(h), which explicitly authorizes a district court to impose an additional term of supervised release following the reimprisonment of those who violate the conditions of an initial term, but had not yet been added to the statute when the defendant was originally sentenced. The Court, however, concluded that such an additional term could be imposed under § 3583(e)(3) without triggering Ex Post Facto concerns that might arise by applying § 3583(e)(h) retroactively.

imposition of supervised release following a recommitment. Contrary to our conclusion in *McGee* (and that of nearly every circuit that had confronted the question), the Court determined that § 3583(e)(3) did authorize a district court to "revoke" supervised release and then reimpose another term following the reimprisonment. Although acknowledging that the conventional understanding of "revoke" would suggest that a revoked term of supervised release would not survive to be reimposed, the Court determined that a number of reasons supported an "unconventional" reading of the word. First, the Court noted that subsection (e)(1) authorized a court to "terminate" a term of supervised release, and observed that if Congress had meant to likewise preclude any possibility of imposing further supervised release under subsection (e)(3) it could have drafted that subsection with like terms. *Johnson*, 529 U.S. at 704. It also pointed out that the text of § 3583(e) authorized the court to revoke supervised release and require "all or part of that term" to be served in prison. The Court reasoned that if part of the term is served in prison, some part continues in some sense after its revocation. *Id.* at 705-06.

The Court found further support for its "unconventional" reading in a Webster's dictionary definition of revoke meaning "to call or summon back." This secondary definition of revoke suggested Congressional understanding that some of the revoked term may remain after imprisonment. *Id.* at 706-07. Finally, the Court observed that such a reading of revoke served the evident Congressional purpose of providing supervision to those who most needed it, chief among them, according to the Court, being those who had "tried liberty and failed." *Id.* at 709.

The Court also drew on the pre-Guidelines parole regime and its repeated use of the word revoke without any question that a new term of parole could follow reimprisonment after revocation of parole. *Id.* at 710-11. Indeed, the Court expressly noted that the same was true of special parole. Noting in a footnote our decision in *Evans*, the Court observed that some courts had concluded that reimposition of special parole after revocation of the initial term and reimprisonment was inconsistent with § 841(c)(1982 ed.). The Court remained silent as to whether such an interpretation remained good law, but simply noted instead that such holdings did not "affect the backdrop against which Congress legislated in 1984" when drafting § 3583(e)(3). *Id.* at 712 n.11.

According to the government, by overruling *McGee's* understanding of "revoke" in § 3583(e)(3), *Johnson* effectively eviscerates the rationale for our similar holding in *Evans* that a revoked term of special parole under § 841(c) turns special parole into regular imprisonment, release from which is normal parole. *See Evans*, 78 F.2d at 264. At least one court confronting the question under similar circumstances has concluded as much. *See Rich v. Maranville*, 369 F.3d 83 (2d Cir. 2004) (concluding that *Johnson's* interpretation of § 3583(e) undermined the Second Circuit's previous interpretation of § 841(c) as forbidding a revoked special parole term from being reimposed), *overruling Strong v. U.S. Parole Comm'n*, 141 F.3d 429 (2d Cir. 1998).

Although the Second Circuit's approach is a defensible one, we believe that it overlooks several important reasons why *Johnson's* interpretation of the word "revoke" in § 3583(e)(3) does not necessarily undermine *Evans'* understanding of that

word in § 841(c). First, the Court acknowledged in *Johnson* that its interpretation of the word "revoke" as something short of abolish or cancel was "unconventional." 529 U.S. at 706-07. And several of the reasons the Court provided to support its unconventional reading are notably absent in the text or policy considerations surrounding former § 841(c). First, the Court in *Johnson* acknowledged that particular language in § 3583(e) supported its use of an "unconventional" definition of revoke. Foremost was the fact that § 3583(e)(1) used the word "terminate" and subsection (e)(3) used "revoke," a textual decision which implied that revoke must mean something different than the very final "terminate." 529 U.S. at 704-05. No such contrast exists in § 841(c), which speaks only in terms of the Commission's power to "revoke" special parole. Thus, one of the key reasons the Court in *Johnson* turned to the unconventional definition of revoke does not exist within § 841(c). This suggests that the ordinary understanding of the word revoke applies, that is, "to officially cancel the power or effect of (something, such as law, license agreement, etc.: to make (something) not valid," www.merriam-webster.com/dictionary/revoke (last visited Sept. 1, 2015) or "to annul by recalling or taking back." Webster's 3d New Int'l Dictionary 1944 (1981); *Johnson*, 529 U.S. at 704.

The Court in *Johnson* also pointed to another textual reason in support of its reading of revoke: § 3583(e)(3) authorizes a district court to revoke a term of supervised release "and require the person to serve in prison *all or part* of the term of supervised release." *Johnson* explained that "if 'the term of supervised release' is being served, in whole or in part, in prison, then something about the term of supervised release

survives the preceding order of revocation." 529 U.S. at 705. This language signaled to the Court that, unlike a "terminated" order of supervised release, a "revoked" order continued to have some effect. *Id.* at 705-06. In contrast, § 841(c) states that when a special parole term is revoked, "the *original term of imprisonment* shall be increased by the period of the special parole term and the resulting *new term of imprisonment* shall not be diminished by the time which was spent on special parole." (emphasis added). Thus, there is no corollary to the idea that after a revocation under § 3583(e) *all or part* of the supervised release term was served in prison and some of the term survived to be served after imprisonment. Instead, under § 841(c) the original term of imprisonment is increased by the special parole term and a "new term of imprisonment" is imposed. In *Evans*, we reasoned that an "'original' term can be augmented only once; after that, it is not original." *Evans*, 78 F.3d at 265. This rationale remains intact in the wake of *Johnson*.

There is yet another textual reason that the unconventional interpretation of "revoke" in § 3583(e) does not translate to the use of the same word in § 841(c). Section 841(c) refers to revoking a special parole term "imposed under this section"—that is to say, imposed by a judge at sentencing, not created by regulation when the "original" special parole term is revoked. As we explained in *Evans,* "[t]he Parole Commission cannot 'impose' a term of special parole any more than it can 'sentence' a defendant to prison." *Id.* at 265. Because supervised release is imposed by the district court and the revocation and reimposition of "the term of supervised release" under § 3583(e) is also overseen by the court, the

impossibility noted above regarding the Parole Commission's authority does not arise with the unconventional interpretation of "revoke" the Court applied to § 3583(e) in *Johnson*—it is the district court that imposes an additional term of supervised release, not, as is the case under § 841(c), the Parole Commission. In sum, although the rationale in the now defunct *McGee* was persuasive to our interpretation of the same word appearing in § 841(c), there are independent textual reasons unique to § 841(c) that provide continued support for the conventional reading of "revoke" that we adopted in *Evans.*

We are also unconvinced that the same policy concerns that animated the Court's interpretation in *Johnson* apply to § 841(c). Under our previous interpretation of § 3583(e) in *McGee*, once a district court revoked supervised release, reimprisonment could not be followed by another term of supervision of any kind. *McGee*, 981 F.2d at 274. As the Court noted in *Johnson*, this result ran afoul of evident Congressional policy favoring post-release supervision—particularly of those individuals who demonstrated a need for ongoing supervision by their inability to comply with the terms of their supervised release. 529 U.S. at 709-10. But our interpretation of § 841(c) as forbidding reimposition of special parole after revocation and reimprisonment does not produce this same result: although the court may not reimpose a term of *special* parole, release from imprisonment is still followed by normal parole. *Evans*, 78 F.3d at 264 ("[T]he first revocation turns special parole into regular imprisonment, release from which is normal parole.") Thus our interpretation of "revoke" in § 841(c) to mean extinguish does not necessarily create the perverse result *Johnson* believed ran afoul of Congresssional intent when

considering that same word in § 3583(e). Edwards' case illustrates the point. If we agree with Edwards that, as we held in *Evans*, the Parole Commission lacks the authority to reimpose special parole, Edwards is currently serving a term of regular parole that will conclude in February 2017. Concluding that *Johnson* overturned *Evans* by implication would leave Edwards serving a term of special parole that will not end until approximately three years later, in March 2020. Under either scenario, Edwards will receive *some* post-release supervision, thus avoiding the dilemma the Court believed our interpretation of § 3583(e) in *McGee* created.

And finally, if *Johnson* leaves us still uncertain as to the meaning of "revoke" in § 841(c), the rule of lenity supports the interpretation we adopted in *Evans*. *See Barber v. Thomas*, 560 U.S. 474, (2010) ("[T]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute,' … 'such that the Court must simply guess as to what Congress intended.'" (internal quotations and citations omitted)). Under the Commission's view, the reimposition of special parole after revocation is automatic, and no credit is ever given for street time. There is thus no discretion as to whether a particular offender receives more or less post-release supervision after a revocation: it will always be more, and the reimposed term of special parole will always be augmented by the length of the lost "street time" preceding the revocation. This is yet another distinction between § 841(c) and § 3583(e)(3), under which the district court's reimposition of supervised release may lengthen or shorten the overall period of supervision. The *Johnson* Court noted as much, observing that the rule of lenity

(which anyway did not apply in that case) would not demand a contrary result because it would be "Delphic" given the impossibility of predicting whether courts would be more or less lenient when imposing another term of supervised release after reimprisonment. *Johnson*, 529 U.S. at 713 n.13. Here, in contrast, the rule of lenity is yet one more consideration that supports our conclusion that *Evans* remains good law.

## III.

Admittedly, our conclusion in *Evans* was "[i]mpelled *in part* by *United States v. McGee*," *Evans*, 78 F.2d at 264 (emphasis added). But our decision in *Evans* was also driven by the language of the former § 841(c) and several policy considerations that remain valid notwithstanding the fact that *McGee* is no longer viable. We thus conclude that *Evans'* interpretation of § 841(c) remains good law, and a special parole term revoked under that section becomes a term of imprisonment that is followed by regular, not special parole. Accordingly, we vacate the decision of the district court denying the petition for a writ of habeas corpus and remand for the issuance of an order directing that Edwards' term of special parole be converted to regular parole.